Argued April 13, reversed May 19, rehearing denied July 7, 1914.

# STEWART *v.* SPALDING.*

(141 Pac. 1127.)

**Contracts—Construction—Subject Matter.**

1. A contract for the construction of a building providing that the contractors shall provide all the materials and perform all the work, entered into pursuant to an offer of contract stating that the contractors will furnish at their own expense such machinery, tools, and equipment as are necessary, requires the contractors to furnish such tools, machinery, and equipment at their own expense.

**Mechanics' Liens—Right to Lien—Subject of Charge.**

2. In a suit to foreclose a mechanic's lien, charges against defendant for telephone and tools, expressage, postage, hose, rent of lot, rent of typewriters, fares, ropes, blue-prints, stamps, insurance, typewriter supplies, clerk hire, stenographers, hat-rack, tools, lunches, office rent, temporary sheds, bookkeeper, premium on bonds, a suit of clothes, etc., were not proper, and should be disallowed.

> [As to tools and appliances used for construction work as materials for which mechanics' lien may be had, see note in Ann. Cas. 1912B, 227.]

**Mechanics' Liens—Right to Lien—Use of Labor or Material.**

3. Section 7416, L. O. L., providing that every builder, laborer, and other person performing labor upon, or furnishing materials or transporting material to be used in the construction of a building shall have a lien for work or labor done or transportation or material furnished, gives a right of lien only for labor or material furnished for the construction of the building.

> [As to "laborer," "workman," or "servant," who is within the meaning of mechanic's lien laws, see note in 32 Am. Rep. 264.]

**Mechanics' Liens—Proceedings to Perfect—Statement.**

4. Where a claim for a lien mingles in a lumping sum lienable and nonlienable items, the lien is invalid, though, if the items appear on the face of the claim to be severable, and some are lienable and others are not, the lien may be sustained as to the former and rejected as to the latter.

**Mechanics' Lien—Proceedings to Perfect—Statement of Claim.**

5. Under Section 7420, L. O. L., requiring a lien claimant to file with the county clerk a claim containing a true statement of his demands after deducting all just credits and offsets, if a claimant makes an honest mistake as to the amount paid or offsets, the mistake will

---

*On the question of the right to mechanic's lien for materials used but not incorporated in structure, see note in 36 L. R. A. (N. S.) 866.

And as to the right to mechanic's lien for materials furnished for structure, but not actually used, generally, see note in 31 L. R. A. (N. S.) 749.

On the effect of filing excessive lien, see note in 29 L. R. A. (N. S.) 306.                                                              REPORTER.

not vitiate his lien, but, where the mistake is not made *bona fide*, it vitiates the lien.

### Mechanics' Liens—Statement of Claim—"True Statement."

6. A statement of a claim for lien in which lienable and nonlienable items are merged in a lumping sum is not a "true statement," within Section 7420, L. O. L., requiring the claimant to file a claim containing a true statement of his demand.

### Contracts—Construction—Building Contract—Payment of Compensation.

7. A building contract requiring compensation to be paid in monthly payments "based on the estimated value of the material and labor incorporated in the building" indicates that the only material and labor to be paid for was that which was incorporated in the building.

### Mechanics' Liens—Enforcement—Sufficiency of Evidence.

8. In a suit to enforce a mechanic's lien, evidence *held* to show that items for machinery and equipment, for postage, telephone, clerk hire, a suit of clothes, and the like were not included in the claim in good faith.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by A. M. Stewart and James C. Stewart, copartners doing business under the firm name and style of James Stewart & Co., against Z. S. Spalding and the Spalding Company, a corporation, and the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, a corporation, and H. J. Fisher, M. G. Thorsen and C. J. Smith, copartners under the firm name and style of Fisher, Thorsen & Company, for the recovery of $56,602.39, and for the foreclosure of a lien therefor for labor and material upon a building and the grounds upon which it stands, in the City of Portland. There was a decree for the plaintiffs in the court below. The plaintiffs appeal, and Z. S. Spalding, the Spalding Company, and the Northwestern Mutual Life Insurance Company, defendants, also appeal from parts of the decree rendered. The facts are set forth in the opinion of the court.            REVERSED.   SUIT DISMISSED.

For plaintiffs and appellants there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt Minor.*

For Z. S. Spalding and the Spalding Company, defendants and cross-appellants, there was a brief with oral arguments by *Messrs. Wilbur & Spencer.*

For the Northwestern Mutual Life Insurance Company, of Milwaukee, Wisconsin, defendant and cross-appellant, there was a brief with oral arguments, by *Mr. Whitney L. Boise* and *Mr. John T. McKee.*

For respondent, Fisher, Thorsen & Co., there was a brief over the names of *Mr. Claude Strahan* and *Mr. C. A. Shepard,* with an oral argument by *Mr. Strahan.*

Mr. JUSTICE RAMSEY delivered the opinion of the court.

On the 3d day of February, 1912, the plaintiffs filed their amended complaint in this suit, and this pleading will be referred to herein as the complaint. The plaintiffs and Z. S. Spalding entered into a written contract, bearing date of July 29, 1909, for the construction, by the plaintiffs for the defendant, of a large building upon lots 3 and 4 in block 47 of the City of Portland (except the interior finish and vault of the banking room and such other parts or items as are specifically excepted in the drawings and specifications); and all the material and work in said building was to be furnished as shown by the drawings and described in the specifications prepared by Cass Gilbert, architect, which drawings and specifications were identified by the parties to said contract, and made a part thereof. In said contract it was provided, *inter alia,* that alterations might be made in the work and in said building

to be erected, and that, if such alterations should be made, the plaintiffs should provide all the materials and perform all the work therefor.

By said contract the plaintiffs agreed to provide all materials and perform all the work for the general construction of said building. By said contract it is provided, among other things, that the sum to be paid by the defendant Z. S. Spalding to the plaintiffs for said work and materials should be $482,314, plus the contractors' commission of $38,000; the total of said two items being $520,314.

It was provided, also, by said contract, that if the plaintiffs should be able to secure lower prices, bringing the total cost of said materials and labor less than the said sum of $482,314, without modifying the quality or extent of the material or labor, then, for any such reduction below the sum of $482,314, that should be made upon the cost of items, specified at the time of said contract as included in said sum, there should be paid to the plaintiffs, by said Z. S. Spalding, an extra commission of 10 per cent on the amount saved to the owner, subject, however, to additions and deductions, as provided in said contract; and that said sum should be paid by said Z. S. Spalding to the plaintiffs in current funds, and only upon certificates of the architect, as follows, that is to say: In monthly payments based upon the estimated value of materials and labor incorporated in said building, less 10 per cent, which should be retained until completion, and should be made a part of the final payment, said estimates to be subject to the approval and certification of the architect, the plaintiffs' commission also to be paid in installments, based upon the value of the material and labor incorporated in said building, as certified by the architect, and that, should the contractors earn extra

commission, as provided by said contract, said commissions should be paid in the final settlement, the plaintiffs to submit all proposals, estimates, bids, and bills of subcontractors on work, whenever requested by the architect or owner, and to submit monthly statements to the architect, showing the amount of material and labor incorporated, and the amount paid for the same, the final payment to be made upon satisfactory completion of the work included in the contract, and all payments to be due when certificates for the same were issued.

After alleging, in substance, the foregoing facts, the complaint alleges also that, in pursuance of said contract, the plaintiffs did provide all the materials and performed all the work for the construction and completion of said building, and provided said materials and performed said work, as shown by the drawings and described in the specifications, made a part of said contract, and have done and performed all things which the plaintiffs agreed to do in and by the terms of said contract.

The complaint alleges also that a number of alterations were made in the materials to be used and the work to be done in the construction and completion of said building, in accordance with the terms of said contract, and that the plaintiffs provided all the material and work for such alterations, in pursuance of said contract.

The complaint alleges also that at the date of the execution of said contract the defendant Z. S. Spalding was the owner and reputed owner of the lands on which said building was constructed, and of the building which the plaintiffs constructed thereon, until after the plaintiffs had commenced the execution of said contract, and had provided a large quantity of mate-

rials and performed a great deal of labor for the construction and completion of said building, and until he conveyed said lands and the building being constructed thereon to the defendant, the Spalding Company, and that since said conveyance the Spalding Company, trustee, has been the owner and reputed owner of said lands and said building.

The complaint alleges that, pursuant to said contract, the plaintiffs provided materials and performed labor in the construction and completion of said building of the reasonable value of $451,888.88, and that said materials provided and labor performed were provided and performed in pursuance of said contract, and were actually provided and performed in the construction and completion of said building, upon the lands above described, and the said materials were used in the construction and completion of said building, and the said labor performed in the construction and completion of said building.

The complaint alleges also that, in addition to said sum of $451,888.88 for the materials provided and labor performed for the construction of the building, the plaintiffs are entitled, in pursuance of said contract, to commissions as fixed by said contract, amounting to $38,000.

The complaint alleges also that alterations were made in said building, and that the plaintiffs provided the materials and labor for constructing and completing said alterations, in pursuance of said contract, and that the actual cost of such alterations so made was $62,983.18, and that the plaintiffs actually provided said materials and performed said labor in constructing said alterations, in addition to the sum paid for materials provided and labor performed in the construction and completion of said building, in pursu-

ance of the original contract, and the amount to be paid for such alterations and changes was agreed on by and between said Z. S. Spalding and the plaintiffs in pursuance of said contract at the sum of $62,983.18, plus a commission to the plaintiffs upon the value of materials and work in said alterations and changes agreed upon by and between the plaintiffs and said Z. S. Spalding at the sum of $6,352.85.

The complaint alleges also that the plaintiffs were able to secure lower prices than those contemplated by said contract, and that the total amount thereby saved, in the construction of said building, was $30,425.12, and they claim that they are entitled to receive for their services a commission upon said sum amounting to $3,044.51. The total amount paid them for constructing said building and for commissions by Z. S. Spalding or the Spalding Company was $505,-665.03, and they allege that there is still owing them a balance of $56,602.39.

On February 3, 1911, the plaintiffs filed with the county clerk of Multnomah County a claim for a lien upon said building and said grounds to secure the payment of said sum of $56,602.39. This claim will be referred to more fully *infra*.

The amounts claimed by the plaintiffs as commission for their services in connection with the construction of said building aggregate $47,394.51. The plaintiffs contend that they are entitled to a lien for said sum of $56,602.39 upon said building and grounds, under the laws of this state allowing persons liens for material and labor furnished for the construction of buildings. This claim of lien was recorded on the 3d day of February, 1911, on page 180 of book R of Records of Mechanics' Liens for Multnomah County. This suit was commenced to foreclose said lien for

$56,602.39, and for $5,000 as attorney's fees in said suit, and for $3.40 paid the clerk for recording said claim of lien. The complaint sets forth a copy of said contract and a copy of said claim of lien.

The answer of Z. S. Spalding and of the Spalding Company denies much of the complaint, and sets up a large amount of affirmative matter. Said answer admits that Exhibits A and B, annexed to the complaint are true copies of the contract referred to in the complaint and of the said claim for a lien upon said building and grounds.

The contract referred to in the complaint bears date of July 29, 1909, but it seems not to have been actually executed until October 1, 1909. The Northwestern Mutual Life Insurance Company holds a mortgage upon the building and grounds described *supra*.

The answer of Z. S. Spalding and the Spalding Company attacks the validity of the lien claimed as stated *supra*, for reasons set out therein. It asserts, *inter alia*, that said building was not properly constructed; that the plaintiffs failed to complete said building within the time specified in the contract; and, as a result of such failure, said defendants lost in rents $12,421.25.

Said answer asserts that the final certificate for the erection of said building was never issued by the architect to the plaintiffs, but that a certificate of that character was written by him, and sent to the defendants, but that it was never delivered to the plaintiffs.

The architect resides in New York, and the answer alleges, in effect, that on or about February 6, 1911, he prepared a certificate payable to the plaintiffs for $55,102.39, on account of the general construction of said building, but that said certificate was never delivered to the plaintiffs, nor to any person for them, but

that it was sent to the defendant Z. S. Spalding, and that it was not executed or delivered to the plaintiffs, for the reason that the plaintiffs had not completed their contract in accordance with the plans and specifications of the contract; that the work and material were unsatisfactory to said architect, and to the defendants; and that said building had not been completed according to the contract.

The answer alleges that the execution of a final certificate by the architect under the circumstances would have been, and was, a gross and palpable mistake, and error on the part of the architect, etc. The answer denies the validity of the lien claimed by the plaintiffs, and sets out in detail facts impeaching said lien. The reply denies most of the affirmative matter of the answer, and then sets out, at great length, affirmative matter.

In the court below this case was referred to a referee to take the evidence, and to make findings of fact and law, and the referee found for the plaintiffs, but rejected a considerable part of the plaintiffs' claim, and the court below modified the finding of the referee and rejected other portions of the plaintiffs' account.

The court below found that the cost of said building, including certain items improperly charged, was as follows:

Total cost of materials and labor performed in pursuance of the original contract ...........................$451,888 88
Total cost of alterations.................  62,983 18
Commissions to plaintiffs...............  47,395 36

$562,267 42

The court below deducted from the above amount items erroneously charged, amounting to $6,919.44, and

$6,588.75 for loss of rents, and some other small items, and found a balance due plaintiffs amounting to $42,624.20. The court below also allowed $3,000 as attorney's fees.

1. Counsel for Z. S. Spalding and the Spalding Company contend that the lien claimed by the plaintiffs is invalid, because it includes many items for which Col. Spalding did not owe the plaintiffs and items that are not lienable, and that the claim of lien is for a lumping sum. In the claim of lien, the demands that are the basis of this claim of lien are stated as follows:

| | | |
|---|---:|---:|
| To labor and material furnished account of general contract | $451,888 | 88 |
| To labor and materials furnished account of alterations | 62,983 | 18 |
| To commission on general contract | 38,000 | 00 |
| To compensation for materials provided and work performed on alterations | 6,352 | 85 |
| To commission for saving effected | 3,042 | 51 |
| | $562,267 | 42 |
| By credit for payments on account | 505,665 | 03 |
| Balance due | $56,602 | 39 |

The lien is claimed for this balance of $56,602.39. It is a lumping sum.

By Article 1 of the contract for the construction of said building it is provided that:

"The contractors [the plaintiffs] shall and will provide all the materials and perform all the work for the general construction and completion of the Spalding Building," etc.

Article 9 of said contract provided, *inter alia:*

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the con-

tractors for said work and materials shall be four hundred eighty-two thousand three hundred and fourteen dollars ($482,314.00), plus the contractors' commission of thirty-eight thousand dollars ($38,000.00) (total $520,314.00). And should the contractors be able to secure lower prices, bringing the total cost of said materials and labor to less than said $482,314, without modifying the quality or extent of the material or labor, then for any such reduction below the sum of $482,314, that may be made, upon the cost of items now specified as included in said sum, an extra commission of 10 per cent shall be paid by the owner to the contractors on the amount so saved to the owner, subject to additions and deductions as hereinbefore provided," etc.

The drawings and specifications are made a part of the contract. The specifications contain the following provision:

"The contractor is to provide derricks, hoists, machinery, scaffolding, tools and appliances of every description required for the proper execution of this work (which must be such as, in the opinion of the architect, are sufficient, and suitable for their purposes), and shall maintain all in good order, and be solely responsible for the safety, use, and care of the same, *and remove all when not further required.*"

On July 29, 1909, the plaintiffs wrote Col. Spalding a letter, making two offers for the construction of the building. One offer was to construct the building for $530,545. The other offer, which appears to have been accepted, is as follows:

"(2) We will erect this building on a percentage basis, you paying only the exact cost of the building, with changes made in the plans and specifications, as estimated, four hundred eighty-two thousand three hundred and fourteen dollars ($482,314); you paying us for our services eight per cent of the actual cost of the building, or, if you prefer, we will make a fixed

commission of thirty-eight thousand dollars ($38,000) on the building erected in accordance with the changes now outlined, subject to any increase for additional work done, not now determined upon; our employment under this proposition being arranged practically in accordance with the contract which I showed you some months ago, made between us and the owners of the First National Bank Building, Denver, which we are now erecting, which contract provides *that we shall furnish at our expense such machinery, tools and equipment as are necessary for the prompt erection of the building;* that we will make every effort and adopt every practical means to reduce the cost of the building as far as possible; * * that we will erect the building in accordance with the plans and specifications proposed by, and satisfactorily to, Cass Gilbert, Esq., architect.''

When counsel for the plaintiffs offered said letter in evidence, he said it was the basis for this contract. Said letter shows that the plaintiffs desired Col. Spalding to understand that they would furnish at their own expense all tools, machinery, and equipment necessary to be used in the construction of the building. Both the referee and the court below construed the contract as requiring the plaintiffs to furnish, at their own expense, all tools, machinery, and equipment necessary to be used in erecting said building, and we hold that such is the meaning of the contract.

The evidence shows that the plaintiffs included in the account set forth in their claim of lien the sum of $2,901.31, charged by them to Col. Spalding for freight on derricks and other machinery, and the cost of machinery, tools, and appliances used by them in erecting said building. Both the referee and the court below held that this item of $2,901.31 was an improper charge, and we affirm that holding. This item covers the tools, machinery, and equipment that the plaintiffs

71 Or.—21

said, in effect, by their letter quoted *supra,* they would furnish at their own expense. In view of the facts relating to these items, we are unable to hold that said items were included in said claim for lien in good faith.

2. The court below held also that the plaintiffs included in their account set out in said claim for lien items, aggregating $4,018.13, which the defendants did not owe them, and we affirm this holding also. These items are set out in the finding of the court below, and are printed on pages 168 to 173, inclusive, in the abstract. This amount of $4,018.13 includes charges for telephone and tools, expressage, postage, hose, rent of lot, rent of typewriters, fares, ropes, blue-prints, stamps, insurance, typewriter supplies, many items for clerk hire and stenographers, hat-rack, towels, lunches, office rent, temporary sheds, bookkeeper, premium on bonds, for a suit of clothes, etc. We approve the finding of the court below that these items were not properly chargeable to Col. Spalding or the Spalding Company.

The court below found also that Col. Spalding was entitled to a credit of $6,588.75 for loss of rents caused by the failure of the plaintiffs to complete the building within the time provided by the contract; but the plaintiffs gave no credit whatever in their claim for loss of rents.

3, 4. Section 7416, L. O. L., says:

"Every * * builder, contractor, lumber merchant, laborer * * and other person performing labor upon or furnishing material, or transporting or hauling any material of any kind to be used in the construction, alteration, or repair * * of any building, * * shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building," etc.

This statute gives a right of lien for labor of material furnished for the construction of a building. The items going into the lien must be either for labor or for material for the building.

In *Stimson Co.* v. *Los Angeles Traction Co.*, 141 Cal. 30 (74 Pac. 357), the court says:

"It is settled by many decisions in this state that, to entitle a materialman to a lien, under Section 1183, Code of Civil Procedure, the materials must be furnished to be used, and must actually be used, in the construction of the building or other structure against which the lien is sought to be enforced, * * and this, we understand, means that the materials must be used, not merely in the process of construction, but 'in the structure'; that is to say, they must be used as the materials of which it is constructed. * * The case, we think, comes clearly within the application of this principle. The temporary structure was put in merely for the purpose of supporting the track until the steel necessary for its permanent support could be obtained. This was done by the contractors on their own account. * * The temporary structure was therefore not a part of the bridge, either as contracted for or as actually completed; but it remained the property of the contractors, who were entitled to remove it. Hence neither the contractors nor the plaintiff as furnisher of the materials for it became entitled to a lien."

In *Edgar* v. *Salisbury et al.*, 17 Mo. 272, the court says:

"When a mechanic or other person claims to have a lien upon a building, he is to file a just and true account of the demand due him, after all credits are given, and that account must appear to be for work or materials for which the statute gives a lien, and, if in a demand upon a single item of charge, any services for which he might have a lien are combined with other charges for which no lien is given, the whole benefit of the act will be lost."

In *Nelson* v. *Withrow,* 14 Mo. App. 276, the court says:

"The principal item of the account filed by the plaintiff as the basis of his claim for a mechanic's lien was a lumping charge of $1,900, for 'carpenter work furnished * * as per contract.' The contract, when put in evidence, disclosed the fact that this item was not alone for carpenter work, for which the law gives a lien, but that it was also for superintending, for which the law gives no lien. * * The contract did not set out how much was to be paid for doing the carpenter work, and how much was for superintending. * * The principle of these decisions is that where an account filed as a basis of a claim for a mechanic's lien contains a lumping charge, in which is mingled an item for which the law gives no lien, the statute has not been complied with, and no lien is acquired in respect of such item."

The court below held in that case that the attempted lien was wholly invalid, and that the defect could not be cured by oral evidence from which the jury might separate the lienable from nonlienable items.

In 2 Jones, Liens, Section 1419, the author says:

"An account containing a lumping charge in which is mingled an item for which no lien is given will not support a lien; and the defect cannot be cured by oral evidence from which a jury may separate items for which a lien is given from those for which a lien is not given."

In *Kezartee* v. *Marks & Co.,* 15 Or. 538 (16 Pac. 412), the court says:

"Counsel for appellants object specially to the claim of Beardsley, for the reason that it is for materials used in the * * construction of a fence. * * The liens under this statute are specific; that is, they extend to the particular structure, building, or erection in or upon which the particular materials were used; or the particular labor was performed. In this case Mr.

Beardsley had a lien upon the fence for the materials furnished and used in its construction, and he had another lien upon the house for the materials used in its repairs and construction; but he had no lien upon the fence for materials used in the house, nor upon the house for materials used in the fence. * * The decree must be so modified as to exclude Beardsley's claim," etc.

In *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 164 (44 Pac. 392), the court says:

"It is admitted that a portion of the material for which the lien of the Harrisburg Lumber Company is claimed was furnished to be used in the construction of a sidewalk around the lots upon which the church is erected and, as the sidewalk forms no part of the 'building,' no lien could attach * * under a claim for material furnished to be used for such purposes. Had the claim contained a lumping charge of the amount demanded, and there were no means of ascertaining from the notice itself the quantity and value of the lumber used in building the sidewalk, the lien would be defeated."

In *Hughes* v. *Lansing,* 34 Or. 124 (55 Pac. 97, 75 Am. St. Rep. 574), the court says:

"It is claimed that some of the lumber obtained and used by Plumber & Ault in Lansing's building was furnished after the waiver, and that the lien for the price thereof could not be affected thereby. But, however that may be, it is utterly impossible to segregate the lienable items, if such there be, from the nonlienable items, in the account set forth in the claim of lien, which is therefore unavailing for the purpose intended."

5. Section 7420, L. O. L., requires every person claiming the benefit of the law to file with the county clerk "a claim containing a true statement of his demand, after deducting all just credits and offsets."

If a claimant makes an honest mistake as to the amount of his claim, or as to the amounts that have been paid or as to the amount of the offsets, such a mistake will not vitiate his claim of lien: *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 407 (51 Pac. 649, 60 Pac. 1); *Rowland* v. *Harman,* 24 Or. 529 (34 Pac. 357).

But where the mistake as to the amount of the lien is not made *bona fide,* it vitiates the lien: *Gordon* v. *Deal,* 23 Or. 153 (31 Pac. 287). The authorities cited *supra* show that, where a mechanic or a materialman makes his claim for a lien in a lumping sum and mingles lienable and nonlienable items in the claim, he fails to comply with the statute, and his supposed lien is invalid. If, however, he sets out in his claim of lien the items making up the amount of his demand in such a manner that the items appear on the face of his claim to be severable, and some of the items are lienable and others are not, the lien may be sustained as to the lienable items and rejected as to those that are nonlienable.

The rule appears to be settled in this state that, where the lien is claimed for a lumping sum, and lienable and nonlienable items of account are mingled together to make up the lumping sum, the lien is invalid; but where the mistake is as to the value of services or material, or as to the amount of credits allowed, and the claimant makes an honest mistake, his error will not vitiate his lien for the amount actually due him. There is not unfrequently more or less honest disagreement as to the value of work or material, and sometimes as to the credits that should be allowed in a statement of demand in a claim for a lien, and hence the courts, in such cases, sustain liens for the amounts actually due.

When, however, a lien is claimed for a lumping sum, and lienable, and also nonlienable, items are mingled

together to make up the lumping sum for which the lien is claimed, and there is no separation in the statement of the demand of the lienable from the nonlienable part of the lumping sum, the supposed lien is invalid, and the defect cannot be cured by parol proof showing the part that is lienable and separating it from the nonlienable portion of the lumping demand.

6. A statement of the demand for a lien in which lienable and nonlienable items are merged in a lumping sum is not "a true statement" of the claimants' demand, within the meaning of the statute.

7. Article 9 of the contract provides for payment for the construction of the building. It provides commissions to be paid the plaintiffs for their services, and also for the work and materials furnished, and it requires payments to be made as follows:

"In monthly payments, based upon the estimated value of the material and labor incorporated in the building."

This indicates that the only material and labor to be paid for was that which was "incorporated in the building."

We find that the charges "for freight on derricks and other machinery and the cost of machinery, tools, and appliances, amounting to $2,901.31," and also the other items referred to *supra,* amounting to the sum of $4,018.13, disallowed by the court below, were not owing from Col. Spalding or the Spalding Company to the plaintiffs, and that said items were not lienable, and that they were included in the demand set forth in the claim of lien, and that said demand was not itemized in such a manner that the lienable part thereof can be separated from the nonlienable portion.

8. We are unable to find from the evidence that said items were included in said amount in good faith. The

approval of said items by the architect was a gross and palpable error. In the plaintiffs' letter of July 29, 1909, making the offer to construct said building, they said, in effect, that they would furnish, at their own expense, the items making up said charge of $2,901.31, and we think that the contract requires them to do that. We do not believe that they acted in good faith in charging for said items. When they charged for postage, telephone, rent of typewriters, rent of storage lot, express and fares, blue-prints, rope, clerk hire, for services of stenographers, timekeeper, hat-rack, carfare, temporary offices, temporary sheds, administration, premium on bonds, and for a suit of clothes, and the like, we are constrained to believe that they were not acting *bona fide.*

Following the rule settled by previous decisions of this court, we are constrained to hold that the plaintiffs' supposed lien is wholly invalid, and that for that reason this suit cannot be maintained. The plaintiffs can litigate their demand in an action in which their grievances against the defendants can be settled.

The decree of the court below is reversed and this suit is dismissed without prejudice.

Reversed. Suit Dismissed.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Moore concur.