Argued July 15, affirmed July 29, 1959

# SMITH *v.* DeKRAAY

342 P. 2d 784

*Ray DeKraay,* Aberdeen, Washington, argued the cause in his own behalf. With him on the brief was William D. Green, Jr., Roseburg.

*Harrison R. Winston,* Roseburg, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Perry, Sloan and Crawford, Justices.

CRAWFORD, J. (Pro Tempore).

The parties entered into an oral agreement in November, 1946, whereby the plaintiff was to erect a concrete block building on the defendant's premises, with the building to be 50 feet by 80 feet in its dimensions, on a cost plus 10% basis plus $2.00 per hour for plaintiff's services other than supervisory. These dimensions were later changed to 48 feet by 110 feet and to include a wing 23 feet by 50 feet. The defendant was to finance the project. This agreement was later modified to provide that the plaintiff would also build two 3-room cabins, two 4-room cabins, and a wash-house.

Plaintiff proceeded with the execution of the contract. A difference of opinion arose, and May 15, 1947,

plaintiff filed a lien against the property claiming a "grand total" of $15,842.52 expended for "labor, material and service costs and charges in construction of said building." Included in the lien were items for social security, industrial accident insurance, unemployment compensation and "other government and insurance charges," aggregating $749.18 and contractor's compensation, 10% in the sum of $1,440.23. Credited on the amount of the lien is the sum of $11,164.52, leaving a claim balance of $4,678.36 with interest at 6% per annum from April 12, 1947, the last date "work, labor, materials and services were furnished." November 14, 1947, plaintiff filed suit to foreclose the lien alleging the claimed balance represented the "reasonable and agreed value of said labor, materials and services" owing after deducting all "just credits and offsets." February 14, 1948, defendant Eva Kay DeKraay filed an answer, being a general denial. [She was later dismissed from the case.] June 14, 1949, defendant filed an answer and counterclaim. The answer consisted of a general denial, a separate and further defense and second separate and further defense and two causes of suit "by way of counterclaim." March 4, 1954, plaintiff filed his reply. The case was tried and January 11, 1957, the court entered its findings of fact and conclusions of law and on January 17, 1957, judgment in the sum of $3,799.49 with interest at 6% per annum from March 19, 1947, $500 attorney's fees, and costs and disbursements. Foreclosure of the lien was directed. Defendant appeals, assigning the following as error:

First. "The trial court erred in reopening the case after the same had been dismissed for want of prosecution."

■ The record fails to show any dismissal for want

of prosecution or otherwise or "reopening" of the case for any reason. The basis for this assigned error lies in the equivocal and inadequate record. It appears statutory notices of proposed dismissal for want of prosecution were filed November 1, 1950, November 1, 1952, and November 5, 1953. It is the last notice with which we are here concerned. ORS 46.270. No action thereon was taken so far as the record discloses showing cause why the dismissal should not follow, and thereafter a copy of an order dismissing the case was received by the attorneys for the parties. The notice and order read as follows:

### *"Notice*

"To: Winston & Dimick, Attorneys at Law, Pacific Building, Roseburg, Oregon. William D. Green, Jr., Attorney at Law, Douglas County State Bank Building, Roseburg, Oregon.

"No action having been taken in the above entitled case for one full year immediately prior to the date of mailing this notice, and pursuant to the provisions of Chapter 223, Oregon Laws 1949, you are hereby notified that the above entitled cause will be dismissed by the court for want of prosecution on the first motion day in January, 1954, unless on or before such first motion day application be made to the court and good cause shown why it should be continued as a pending case.

"Dated this 5th day of November, 1953.

Chas. Doerner,
County Clerk.

By /s/ Loreta Walker,
Deputy Clerk."

"Notice of dismissal of the above entitled cause for want of prosecution having been given as re-

quired by law, and no good cause having been shown why it should be continued as a pending case,

"It is hereby ORDERED that said cause be and is hereby dismissed for want of prosecution.

"Dated January 30, 1954.

Carl E. Wimberly,
Circuit Judge.

"Winston & Dimick
"William D. Green"

■ The record fails to show any such order was filed; and explanation is lacking. Nor does any order "reopening" appear in the record. The picture is confusing, but all we can do is follow the record and conclude the first assignment of error is not well taken. However, in any event, the disposition of such proceeding is lodged in the sound discretion of the court. *Reed v. First National Bank of Gardiner,* 194 Or 45, 241 P2d 109. No error.

Second. "The court erred in refusing to dismiss the case on motion of the defendant for lack of diligent prosecution." ORS 46.270. (Filed February 11, 1954).

■ We share defendant's criticism of the delay attending this case and its final disposition. Filed in 1947 it was not until January 17, 1957, we find judgment and decree from which this appeal was taken. This delay is only partially explained by the record and scarcely justified. However, the matter was presented to an experienced trial judge who ruled thereon with full knowledge of the circumstances, which ruling controls our action in the absence of a showing of abuse of discretion. And the only showing made is based upon delay. This question is controlled by *Reed v. First National Bank of Gardiner,* supra, from which we quote:

"In dismissing an action for want of prosecution, the court may proceed under the statute, or it may,

of its own motion, take action to that end. In acting on its own motion, the court must proceed with judicial discretion. Its ruling will not be disturbed on appeal unless it is manifest from the record that the court's discretion has been abused."

No error.

Third. "The doctrine of laches should have been applied to the stale claim of the plaintiff."

■■ Laches was not pleaded and may not be considered by us when raised for the first time on appeal. *Tanous v. Johnston,* 113 Or 343, 232 P 793; 3 CJ p 710. Further, we are unable to conclude from the record that defendant was prejudiced by the delay. No error.

■ Fourth. The court erred in failing to find "That the cost-plus contract was modified by the parties to become a firm contract for a definite price."

We find absolutely no evidence or indication in the record supporting this assignment. Exhibits Nos. 2 and 3, relied on by defendant, do not offer any evidence of such modification:

> "Myrtle Creek, Oregon
> February 17, 1947

"Ray De Kraay
Finch Bldg.
Aberdeen, Wash.

Dear Ray:

Ed called me this morning and told me you wanted a letter to show to the bank down there to support a loan to cover the garage building to such extent that this bank would then take over.

I just talked to Church; he tells me that they have a new ruling from the Portland Office where in as a building has to be totally completed before they will make a loan.

I told Ed Saturday when he was here that it would take approximately $35500 [sic] and I could

see the rest to get the job in such shape that Church would consider a loan; but now that the building has to be totally completed that would change the entire picture.

I can omit temporarylly in several places and make some saveing; but I still think it would take $5,000 more to put it in any kind of condition that would be acceptable to the bank here.

I am enclosing another letter that you can use to deal with the bank there. I don't think there is any question about Church loaning the money, the only thing is they have changed their policy and the building has to be completed which of course changes our whole deal.

I am also enclosing a plot plan of the projest [sic] which might be useful for your deal down there.

Sincerely,

EJS:NVB                                          E. J. Smith."
Enclosures

"Myrtle Creek, Oregon<br>February 17, 1947

"Ray DeKraay
Finch Bldg.
Aberdeen, Wash.

Dear Ray:

I have talked to Church here in the bank and he says they are willing to give you a loan on the garage building and house project here in Myrtle Creek when it is completed. It will take $5,000 more to put this project in a condition acceptable to the bank. So the sooner you get this down here, Ray, the sooner we can get Warner in.

I am encloseing a plot plan of the project which might be useful for your deal down there.

Sincerely yours,

EJS:NVB                                          E. J. Smith."

No error.

■ Fifth. It is here argued the lien was not filed within 60 days "after plaintiff's abandonment of the contract" and that nonlienable items were knowingly included in the lien.

The statute requires the original contractor to file his claim of lien "within 60 days after the completion of his contract." ORS 87.035. The lien was filed May 15, 1947. Plaintiff contends the filing was timely in that some substantial work was done March 17, 18 and 19, 1947. Plaintiff argues any work done on those dates "was not of benefit to the project"; that the project "was substantially closed down on March 7, 1947." The evidence shows the following work performed on March 17, 18 and 19:

"Q Now, Mr. Smith, I hand you from Plaintiff's Exhibit N vouchers 252 to 255, inclusive, and vouchers 239 to 244, inclusive, and vouchers 245 to 251, inclusive, and ask you to examine them. —Now, those represent, as I understand it, items that are included on the bill of particulars for the days of March 17, 18 and 19, 1947. Is that correct?

"A Yes. These are time slips for those three days.

"Q ·Can you tell us, from examining those and perhaps from your notes that you were testifying from a few minutes ago—can you tell us what work was performed on this job on those dates?

"A Forms, concrete, forms, concrete. There are two carpenters on forms and two laborers on concrete. That was on the 17th—partial listing 252 through 255. Time slips 245 through 251, by these time slips, it so says that one man was on forms, one man was on concrete, one man was hauling in equipment, one man was on concrete again and one doesn't say.

"COURT: Is Woster in that?

"A He may be in this one, Sir. This is 239 through 244. One doesn't say; one says 'forms';

one says 'concrete'; one says 'concrete' and one says 'concrete'—which is Woster, Your Honor, March 18, '47. And one says 'concrete' again.

"Q Can you tell us what they were doing?
"A I just did.

"Q They were working on concrete?
"A And on forms.

"Q What were they doing to the building at that stage of the game?
"A Well, I am sure that the forms—it could have been forming in lintels and pouring them. It is pretty hard for me to pick the 18th of a month nine and a half years ago and remember just exactly what six or seven different men were doing on three different days.

"Q Then your answer is that you don't know what they were doing?
"A I have no alternative but to give you the answer that you have on the cards there."

The time slips referred to support this testimony.

We conclude that this work did not fall within the category of "trifling omissions," repairing defects and "substitutions" held insufficient to keep the time running within *Fox & Co. v. Roman Catholic Bishop,* 107 Or 557, 215 P 178.

■ Further, it may be observed, and we so find, that plaintiff was ordered from the job and premises April 10, 1947, by the "No Trespass" direction of defendant. And this apparently was not justified. It follows, therefore, that any "abandonment" was not a voluntary act of plaintiff and that plaintiff did not "abandon" the contract but that defendant breached the same. Such "abandonment" would be justified. *Gabriel v. Corkum,* 183 Or 679, 196 P2d 437. The fact plaintiff left quantities of materials and equip-

ment on the premises indicates he intended to continue until the job was completed.

■■■■■ As to the claim of inclusion of nonlienable items. True, if both lienable and nonlienable items are mingled in the lien and are not severable, the lien is invalid. *Stewart v. Spalding,* 71 Or 310, 326, 141 P 1127:

> "* * * If, however, he sets out in his claim of lien the items making up the amount of his demand in such a manner that the items appear on the face of his claim to be severable, and some of the items are lienable and others are not, the lien may be sustained as to the lienable items and rejected as to those that are nonlienable."

The lien included in a separate statement this item:

> "Social security, industrial accident insurance, unemployment compensation and other government and insurance charges—$749.18."

The lower court held these items nonlienable and disallowed the same. This item was clearly "severable." It is argued the trial judge improperly allowed "charges for transportation between jobs, supervision, office work, cost of surveying and blue prints, bookkeeper being charged as an Expediter, and temporary sheds." And in support of this contention we are directed "See Bill of Particulars." Attention is not otherwise directed to the Bill of Particulars or to the evidence. We find no error in allowing the supervision charge of 10% of cost. Cost of surveying for location of a building was lienable. No charge was made for blue prints. No temporary sheds were constructed. Our attention has not been called to nonlienable items included in the lien claim other than the suggestion we see the Bill of Particulars. Just

how we are to relate this to the evidence is not indicated. On the basis of our information we find no nonlienable items "knowingly" or otherwise included to any material extent. It is further argued: "Also, nonlienable items which were included in the lien were the very considerable items of unused material left on the job." We quote from *Fitch v. Howitt*, 32 Or 396, 409, 52 P 192:

> "All the material so provided by Beach having been lienable, he had a right to file his claim for the full amount so supplied, which it must be presumed was used in the building; for it cannot be expected that a materialman would be obliged to watch the progress of a structure, to see that every stick of timber or other material so supplied by him was used therein, and if the owner would defeat a foreclosure of the lien for the amount demanded, the burden should be cast upon him to allege and prove that some of the material, if the accurate amount thereof was capable of computation in advance, or, if not, that an unreasonable quantity thereof, remained unused after the building was fully completed, or that, without his consent, it had been removed from the building site."

Sixth. "That the plaintiff did not meet his burden of proof by showing that the items included in the lien claim were actually used in the construction."

■ Plaintiff's evidence. establishes the fact of *furnishing* labor and material as set forth in the claim of lien. The items of the "Recapitulation" of labor and materials are supported by plaintiff's records of payments, vouchers, entries and the testimony of plaintiff, Joseph Dyer, Edward Schartner and H. F. Woster. So far as *use in construction* is concerned, it appears some material was left on the premises when plaintiff quit work pursuant to the "No Trespass" order,

and there is no showing as to what became of this material. Plaintiff claims his lien covers the same though not "actually used in the construction," and argues the burden of proof is on defendant to prove materials so furnished were not actually used in the construction. And such is the holding of this court in *Northwest Lumber & Fuel Co. v. Plantz et al.,* 126 Or 69, 227 P 1116, 268 P 763, and in *Fitch v. Howitt,* supra.

In support of this assignment, defendant offered the testimony of Eva Kay DeKraay, who completed the job after plaintiff ceased work. The lien was filed May 15, 1947, and Mrs. DeKraay arrived in August, 1947. She made substantial changes in construction. The trial judge discounted her testimony as to materials furnished and used at the time the lien was filed. She testified much material was not on the premises *at that time*, August, 1947; that much material was unused, defective, and that pictures showed defective workmanship. It is clearly established the materials were on the premises April 15, 1947. She also testified from photographs. W. H. Gerretsen, dealer in building material, testified as an expert on the basis of hypothetical questions and an examination of photographs. By this testimony defendant sought to elicit information as to the amount of materials, etc. that went into the buildings. The witness was never inside any of the buildings. H. McCarley, mechanic, residing in one of the cabins, testified some of the construction work involved in the cabins was fair, some bad. He stated in dollars the amount of lumber, plumbing, etc. that went into each of the cabins and the washhouse. This defense testimony was inadequate to overcome the testimony on behalf of the plaintiff. The burden was on defendant to prove materials fur-

nished were not used in the construction of the buildings. *Northwest Lumber & Fuel Co. v. Plantz et al.,* supra. Defendant has failed to sustain this burden of proof. No error.

Seventh. Wilful abandonment waived the lien. This assignment covered under fifth assignment above. No error.

Eighth. The court erred in allowing attorney's fees in excess of the amount demanded. The complaint prayed for attorney's fees in the sum of $450 and the court allowed $500. The decree will be modified by reducing the attorney's fees allowed plaintiff to $450. See, *Skym et al. v. Weske Consolidated Co.,* 47 P 116, 5 Cal Unreported Cases 551; *Wellington v. Mid-West Ins. Co.,* 112 Kan 687, 212 P 892; *St. L. & S. F. Rly. Co. v. Armstrong,* 25 Kan 561; and 1 Black on Judgments, 2d Ed, 200, Section 138.

As modified, the decree is affirmed. Neither party is allowed costs in this court.