Argued and submitted December 19, 1983, affirmed July 11, 1984

# ROBERTSON, HAY & WALLACE,
*Respondent,*

*v.*

# KUNKLE et al,
*Defendants,*

*and*

# FIRST INTERSTATE BANK OF OREGON,
*Defendant - Third-Party Plaintiff - Appellant.*
## (A8108-05279; CA A26635)

686 P2d 399

Jeffrey M. Batchelor, Portland, argued the cause for appellant. With him on the briefs were O. Meredith Wilson, Jr., Wayne Hilliard and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Richard C. Goss, Portland, argued the cause for respondent. On the brief was George E. Birnie, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

■ Plaintiff brought this action to foreclose a lien for labor and materials used in the construction of facilities on land leased by defendant Kunkle from the Port of Portland. Defendant First Interstate Bank of Oregon (First Interstate) contends that plaintiff's lien is invalid and that, because of Kunkle's default on a note given it to finance the construction, it is entitled to foreclose its mortgage on Kunkle's leasehold interest securing that note. The court determined that plaintiff's lien is valid and superior to the claims of all others[1] and entered a decree foreclosing that lien and also a judgment for plaintiff against Kunkle for $480,581.52.[2] First Interstate appeals. On *de novo* review, we affirm.

On September 27, 1979, plaintiff, a contractor, and Kunkle, a developer, entered into a contract for the construction of an air cargo facility to be known as Building D at the Portland International Airport. Building D was to be constructed by plaintiff on premises owned by the Port of Portland and leased to Kunkle for a 20-year period, partially for that purpose. The terms of both the lease and the construction contract required, as part of the project, construction of a paved passageway to permit vehicles to be used for loading and unloading air cargo and also the performance of electrical work, excavation and grading for road preparation, curb striping, security fencing and landscape services. Although most, if not all, of that additional work was to be performed off

---

[1] The claims of other defendants are not material to this appeal. Defendants McCoy Electric and Cascadian Landscapers, plaintiff's subcontractors, contended that plaintiff owed them certain sums and that their liens had priority and should be foreclosed against Kunkle's interest. Both took money judgments against plaintiff and default judgments against Kunkle. Cascadian eventually conceded that plaintiff and First Interstate hold claims superior to its lien. McCoy released its lien prior to trial.

[2] In its "Findings of Fact, Conclusions of Law, Judgment and Decree (Second Corrected)," the trial court included a finding pursuant to ORCP 67B that "there is no just reason for delay in the entry of the judgment and this decree of foreclosure." Although the court did not articulate the reasons for its determination, those reasons are apparent from the face of the record. The only claim that remains unadjudicated is Kunkle's claim against First Interstate that his note and mortgage should be rescinded. That claim has no relation to his liability to plaintiff, to the validity of plaintiff's lien or to its right to foreclose it. Thus, the questions presented in this appeal will not be presented again, and because there are no claims between Kunkle and plaintiff, there will be no setoff against the judgment now before the court. For these reasons, we conclude that the judgment from which First Interstate appeals is sufficient under ORCP 67B and that this court has jurisdiction. *But see Bonner v. Krause,* 69 Or App 1, 684 P2d 10 (1984).

the leased premises, Kunkle's project engineer testified that the work was vital and necessary for the use and operation of Building D on the leased premises.

Construction was completed in April, 1981, at which time Kunkle owed plaintiff $575,849. On June 23 or 24, 1981, plaintiff filed a lien for that amount. Plaintiff thereafter timely notified Kunkle and First Interstate of the filing of the lien and of its intention to foreclose if the amount claimed was not paid. It was not, and this action followed.

■    First Interstate recognizes that a valid lien filed pursuant to ORS 87.010(1) is preferred to all prior liens, mortgages or encumbrances, ORS 87.025(2), but contends that plaintiff's lien contains unsegregated lienable and non-lienable claims and is, therefore, invalid. *Hays v. Pigg,* 267 Or 143, 515 P2d 924 (1973). First, it contends that more than $50,000 of the lien claim relates to work performed off the leased premises, such as landscaping and the excavation and grading of the parking area, and is nonlienable under ORS 87.010(1), under which plaintiff claims its lien, because that statute permits a lien only for labor performed on and materials incorporated in an "improvement," which includes:

> "* * * any building, wharf, bridge, ditch, flume, reservoir, well, tunnel, fence, street, sidewalk, machinery, aqueduct and *all other structures and superstructures, whenever it can be made applicable thereto.*" ORS 87.005(5) (Emphasis supplied.)

That broad language led the court in *Tri-City Bldg. Center v. Wagner,* 274 Or 581, 582, 548 P2d 961 (1976), to conclude that blacktopping and a site-obscuring fence were "improvements" that were to be considered in determining the date of completion of construction under ORS 87.035. We conclude that all of the work, except landscaping, comes within the broadly construed definition of "improvement."

■    Although First Interstate concedes that ORS 87.010(2) permits a lien for the "preparation of a lot or parcel of land," and that "preparation" is defined in ORS 87.005(9) to include "excavating, surveying, landscaping, demolition and detachment of existing structures, leveling, filling in, and other preparation of land for construction," it maintains that plaintiff claimed a lien only under subsection (1) of the statute. However, First Interstate's contention is that the

claim for landscaping is *nonlienable* and that, because that nonlienable claim was not segregated in the lien, the entire lien is void. The lien asserts a construction lien under a contract for construction of Building D on the described premises. ORS 87.010 gives plaintiff the right to claim that lien. Subsection (2) permits a claim for landscaping; however, a lien claim under that subsection does not have priority over a prior mortgage. Because the bank has not contended that a portion of the lien claimed is not prior to its mortgage, but only that the claim was nonlienable, its argument fails.[3] Accordingly, we conclude that plaintiff has a lien for all of the work and materials involved in that portion of its claim, unless a lien may not be claimed for them because they were performed and provided off the leased premises.

Although the definition of "improvement" (ORS 87.005(5)) may not be sufficiently broad to encompass landscaping, excavation and other work performed outside the property line in every situation, we believe that it is here. Kunkle's lease required that that work be done as part of the improvements, and it is apparent that the Port required Kunkle to perform that work because, as Kunkle's project engineer testified, it was vital and necessary for the operation of the main structure. In carrying out his obligation under the lease, Kunkle required plaintiff to perform that work under the construction contract. After the construction contract was executed, First Interstate made its loan to Kunkle, secured by a mortgage on Kunkle's leasehold interest. It is difficult to believe that it would have made that loan unless it was satisfied that Kunkle had undertaken to comply with his lease obligations. Furthermore, it is reasonable to assume that all of those improvements enhanced the value of the bank's security in Kunkle's leasehold. Under the circumstances here, we conclude that the questioned claims relating to labor and materials performed and supplied off the leased premises are lienable under ORS 87.010.

■ ■     First Interstate also challenges the trial court's refusal to invalidate the lien, because it contains an unsegregated, nonlienable charge of $41,450 for materials delivered to

---

[3] We do not consider what result would follow if the claimed error were that the lien failed to segregate priority and non-priority (but lienable) claims. *See Benj. Franklin S & L v. Hallmark*, 257 Or 436, 479 P2d 740 (1971).

the site, but not incorporated in the construction. Although the general rule is that, when unsegregated lienable and nonlienable charges are lumped together so that extrinsic evidence is necessary to segregate them, the entire lien is invalid, there are exceptions. *Hays v. Pigg, supra,* 267 Or at 148; *Smith v. DeKraay,* 217 Or 436, 446, 342 P2d 784 (1959). The purpose of that rule is to allow the owner of the property to identify on the face of the lien the claims that are valid and those that are not so that he may discharge the valid ones before a foreclosure proceeding is commenced, thereby avoiding the cost of litigation. *Hays v. Pigg, supra,* 267 Or at 148; *Benj. Franklin S & L v. Hallmark,* 257 Or 436, 441, 479 P2d 740 (1971). Noting that rationale, the court in *Hays* refused to invalidate a lien for the cost of work done on a prefabricated home off the premises where the home was erected when the owners were aware of the deficiencies in the home and of the contractor's negotiations with the supplier for a credit on the purchase price. There, the court concluded that the owners had sufficient knowledge with which to question the amount of the lien and thus would not have been prejudiced in settlement negotiations prior to the commencement of the suit.

Here, Kunkle had directed plaintiff to order the materials in question and to deliver them to the site for tenant improvements. Kunkle's project engineer testified that both he and Kunkle were aware that the materials had been purchased and delivered and that they had not been incorporated in the construction. On these facts, it is clear that Kunkle had sufficient knowledge with which to question the amount of the lien claim. Accordingly, the entire lien is not invalidated as to Kunkle.

First Interstate contends, however, that it, too, was entitled to be able to ascertain the validity of plaintiff's claims from the face of the lien and that, because it could not, the lien is invalid as to it. As support for that argument, it relies solely on language from *Benj. Franklin S & L v. Hallmark, supra,* 257 Or at 442:

> "* * * Because the liens lumped the items which were entitled to priority with those which were not, the plaintiff-mortgagee could not tell in advance of litigation by inspection of the liens the amounts that had to be paid to the defendants-lienors to protect its mortgage. Therefore, by lumping in their

liens those items which were entitled to priority with those which were not, defendants lost priority to plaintiff's mortgage of those portions of their liens which were for labor."

That case, however, involved the construction of *former* ORS 87.025(3), which provided that, before a lien for materials or supplies has priority over a previously recorded mortgage, notice of delivery must be given to the mortgagee. Because the lienors in that case had failed to give the statutory notice of delivery of materials, as a result of which they had lost priority as to claims for materials, the court concluded that the lienors had also lost priority as to labor charges when they failed to segregate them. Although their lien claims were valid, they lost their priority over the mortgage because of the failure to give the statutory notice to the mortgagee. At no time has First Interstate relied on the proposition that plaintiff's lien lost its priority, in whole or in part, because it failed to give notice of delivery of materials, even assuming that it was required to do so.

The principal contention is that the nonlienable items amounted to about 7 percent of plaintiff's total claim, which First Interstate argues is a substantial enough overstatement to invalidate the entire lien. We have already held that the lien is valid, notwithstanding the failure to segregate the lienable from the nonlienable claims, because Kunkle knew of the nonlienable items. Having so held, it is unnecessary for us to consider the other aspect of the rule, on which the bank relies,[4] relating to the segregation of lienable and

---

[4] In *Hays v. Pigg, supra,* the court articulated a second ground for its decision not to invalidate the lien:

"* * * If the nonlienable charge is extremely small as compared to the total item in which it is included, and if it is inserted without malicious intent, the rule of *de minimis non curat lex* should apply. No one is perfect and small errors are bound to exist in any lien filed upon a construction project of any considerable size. It is not realistic to become so technical that such errors defeat an otherwise valid lien for a large amount. * * *" 267 Or at 149. (Emphasis in original; citation omitted.)

In that case, a $21 nonlienable charge was included in a labor charge of $1,844.50 (a 1 percent overcharge). An examination of other decisions, however, shows that there is considerable disagreement over what constitutes a *de minimis* overcharge. *Compare Brown v. Farrell; Farrell v. Brown,* 258 Or 348, 483 P2d 453 (1971) ($50 nonlienable charge included in charge of $490, a 10 percent overcharge, considered a "trivial discrepancy") *with Deal v. Edwards,* 51 Or App 203, 204, 624 P2d 1099 (1981) (lien invalid when nonlienable charge exceeded total claim by not less than 9 percent).

nonlienable items when the owner does not have sufficient knowledge to question the lien.

■ ■ There are circumstances when a construction lien may be enforced against an owner but not against a mortgagee, such as: (1) when the lien claim does not have priority over the mortgage or (2) when the lienor fails to protect his priority over the mortgage by giving the notice of delivery to the mortgagee as required by statutes or, perhaps, (3) when priority and non-priority claims are not segregated in the lien. None of those questions is before us. Accordingly, given the issues as framed, we conclude that the lien is not invalid and that the remedy is to reduce the claim by the amount of the nonlienable items. The trial court did that, and there was no error.

■ Finally, First Interstate contends that plaintiff's lien is invalid, because it is against public property. In its decree of foreclosure, the trial court ordered the sale of Kunkle's interest in the lease and of Building D and other improvements. First Interstate does not appear to dispute the fact that the Port of Portland had authority to lease the property, ORS 777.250(1), or that Kunkle's leasehold interest is subject to the lien, ORS 87.015; rather, it argues that, because allowing an encumbrance on the leasehold by operation of law violates a covenant in the lease, it could result in a default. If that occurred, the Port would have, and might exercise, the option to terminate the lease, in which case "plaintiff's lien must attach to nothing or to public property." Those events have not occurred, however, and we will not anticipate them. Among other things, if the Port were to terminate the lease, First Interstate's mortgage would be in jeopardy. The issue attempted to be presented is hypothetical.

Affirmed.