# NORTHWEST IRONWORKS, INC.,
## *Respondent,*
### *v.*

# RIPPLING RIVER DEVELOPMENT
## CORPORATION et al,
### *Appellants.*

(82-4-353; CA A27874)

691 P2d 111

Robert J. Miller, Sr., Beaverton, argued the cause for appellants. With him on the brief were Allen Reel and Moomaw, Miller & Reel, Beaverton.

F. Gordon Allen, Portland, argued the cause for respondent. With him on the brief was Karen E. Stratton, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants appeal from a judgment foreclosing a construction lien. ORS 87.010. We affirm.

Defendant Rippling River Development Corporation (owner) contracted with Bart Hess Building Contractor, Inc. (Hess), the general contractor, for construction of a restaurant and lounge at Rippling River Lodge.[1] Plaintiff orally agreed with Hess to furnish and fabricate the steel beams, trusses and miscellaneous steel for the job. Hess agreed to pay plaintiff $96,510.[2] As part of the owner's "fast track" construction plans, plaintiff began to fabricate the steel before the owner's architects had completed their drawings. With the assistance of the architects and engineers, plaintiff used the owner's incomplete architectural drawings to prepare more detailed shop drawings, from which it fabricated the steel in its shop. Although plaintiff sent most of the fabricated steel to the job site before December 1, 1981, it continued to do so throughout December and into January 1982. Hess assembled the steel on-site.

Some of the steel did not fit properly. Two support columns for overhead beams and two "saddles" were too long, because Hess had given plaintiff misinformation about the dimensions of the building foundation. Plaintiff did not fabricate two "hangers," because they were not shown on the owner's architectural drawing. Hess asked plaintiff to send a welder to make adjustments to the steel and to add the missing pieces. Plaintiff sent its subcontractor, J & J Welding, to weld on site on December 18 and 21, 1981. In late January 1982, Hess assembled two "triple-column assemblies." Each contained about 40 pieces that plaintiff had supplied and that supported the second floor and roof of the structure. Except for one angle clip that plaintiff placed on the wrong side of a beam, the pieces complied with the architectural drawings. Certain bolt holes did not line up, although they were placed as specified in the architectural drawings. The owner's

---

[1] Although the other appealing defendant is the lender, American Guaranty Life Insurance Company, the issue is the validity of plaintiff's lien, not its priority. *See* ORS 87.025(6).

[2] The total amount claimed in the lien notice was $64,198, which is the total of plaintiff's unpaid progress billings plus $18 for preparation and recording of the lien notice.

engineers permitted plaintiff to weld the pieces together rather than bolt them. Plaintiff sent two employes to the site in late January for three days to do that welding and to replace the angle clip.

On completion the owner paid Hess the full amount that Hess owed to plaintiff, but Hess went bankrupt and did not pay plaintiff's last progress billing for $64,180. On March 10, 1982, plaintiff filed a construction lien for $64,198, claiming $67,249.36 for materials and $27,710.64 for labor, less $30,780 that Hess had previously paid. Plaintiff's lien notice described its labor as "welding, steel installation, supervision and inspection, and fabrication."

Plaintiff did not give a materialman's notice to the owner within ten days of delivery of the materials for which it claimed a lien. ORS 87.021. Defendants first assign as error that the court found that ORS 87.021(4) excused plaintiff from giving the notice, because it performed "labor upon an improvement." ORS 87.021 provided:

"(1)   Except where materials or supplies are delivered at the request of the owner, a person furnishing materials or supplies for the construction of an improvement and for which a lien may be claimed under ORS 87.010 shall give a delivery notice to the owner of the site. The delivery notice shall be given not later than 10 days after the date of delivery, and is not required for subsequent deliveries.

"* * * * *

"(3)   A lien for material or supplies furnished shall not be enforced unless the notice required by subsection (1) of this section is given.

"(4)   A person who performs *labor upon an improvement* and in addition furnishes material used in the construction of that improvement need not give the notice required by subsection (1) of this section in order to acquire a lien under ORS 87.010."[3] (Emphasis supplied.)

Defendants argue that plaintiff's labor was not "labor upon an improvement," because its on-site labor only corrected errors in materials that it had supplied and the rest of its labor was

[3] ORS 87.021 was amended by Oregon Laws 1981, chapter 757, section 3, effective January 2, 1982. The amendment applies to all construction commenced after that date. Here construction commenced before January 1, 1982. ORS 87.021 is *former* ORS 87.020.

off-site. Accordingly, defendants argue that plaintiff's lien is invalid, because it did not give a materialman's notice. We disagree.

■ Plaintiff's on-site labor was "labor upon an improvement" within the meaning of ORS 87.021(4). The statute does not expressly require any particular amount of labor. Plaintiff's on-site labor was not *de minimis. See Hays v. Pigg,* 267 Or 143, 515 P2d 924 (1973); *Robertson, Hay & Wallace v. Kunkle,* 69 Or App 99, 105 n 4, 686 P2d 399 (1984); *Deal v. Edwards,* 51 Or App 203, 204, 624 P2d 1099 (1981). Plaintiff's employes and subcontractor worked on-site for five days. We may attribute to plaintiff the labor of both its employes and its subcontractor. *See Timber Structures v. C.W.S.C. Wks.,* 191 Or 231, 249, 229 P2d 623 (1951); *Christman v. Salway et al.,* 103 Or 666, 686, 205 P 541 (1922).

Defendants assign as error that the court found that plaintiff's on-site labor was required because of errors made by both plaintiff and defendants. We agree with the finding. The architectural drawings and the "fast track" construction program were causes of errors. Plaintiff was not solely responsible for the errors that it corrected on-site. We also agree with the court's finding that "fabrication of such extensive structural steel in a subcontractor's shop will seldom be so perfect as to preclude on-site labor." Moreover, the statute does not exclude plaintiff's labor that merely corrected errors.

Because we hold that plaintiff's on-site labor was "labor upon an improvement" and, accordingly, that plaintiff did not need to give a materialman's notice to the owner, we do not need to decide if plaintiff's off-site labor, under the facts here, was also "labor upon an improvement."

■ Defendants also assign as error the trial court's finding that the lien was timely filed.[4] ORS 87.035(1) provides:

"Every person claiming a lien under ORS 87.010(1) or (2) shall file the claim not later than 90 days after he has ceased to provide labor, rent equipment or furnish materials or 60 days after completion of construction, whichever is earlier."

---

[4] Defendants state as their assignment that "the court erred in allowing materials supplied more than 90 days prior to the filing of the lien to be included in the judgment."

Plaintiff provided materials into January 1982. The court correctly concluded that the 90-day period did not commence to run before December 10, 1981. Plaintiff's filing of the lien on March 10, 1982, was within that period, even though plaintiff had delivered most of the materials to the site before December 10.[5]

Affirmed.

---

[5] Defendants argue that plaintiff's errors made necessary its on-site labor in December and January and, therefore, affect the date from which the 90-day period runs. We do not need to discuss the issue further, because plaintiff also supplied materials within 90 days before March 10, 1982. We also note that the owner shared in the responsibility for the errors.