JACK I. RAFFEL & others[1] vs. DAVID W. PERLEY.

Middlesex.  May 13, 1982. — July 28, 1982.

Present: PERRETTA, DREBEN, [ KASS, JJ.

*Surveyor.  Negligence*, Surveyor.  *Statute*, Construction.  *Uniform Commercial Code*, Sale of goods.  *Words*, "Improvement."

A survey and plan dividing property into lots, at least where the plan is unrelated to any proposed construction or changes in the topography of the land, is not the "design" or "planning" of an "improvement to real property" within the meaning of G. L. c. 260, § 2B.  [242-246]

An allegation that an error in a land survey was not discovered until July, 1979, allowed the plaintiffs in an action brought in 1981 to present evidence that their claims for relief did not accrue until that time, and consequently claims alleging negligence and breach of warranty could not be dismissed as untimely.  [246-247]

Warranty provisions contained in art. 2 of the Uniform Commercial Code, G. L. c. 106, had no application to a contract for the preparation of a land survey plan.  [247]

CIVIL ACTION commenced in the Superior Court Department on May 21, 1981.

A motion to dismiss was heard by *Mitchell*, J.

*John K. Britt* for the plaintiffs.

*Francis E. Jenney* for the defendant.

DREBEN, J.  The plaintiffs appeal from the dismissal of an action brought in 1981 against the defendant, a civil engineer and land surveyor, who, they allege, negligently and in breach of express and implied warranties, erroneously located boundaries on a May, 1973, plan. The plan was attached to the complaint and appears to have been prepared to obtain an endorsement under G. L. c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, that "approval under the subdivi-

---

[1] Margaret A. Raffel and Create and Construct, Inc.

sion control law [is] not required" by the planning board of
the town of Pepperell. So far as appears from the complaint,
the plan was not ordered by the owners in contemplation of
any physical alteration in the land, and, in particular, there
is no suggestion that any roads, utilities or a change in topo-
graphy was contemplated.[2] The primary issue presented in
this appeal is whether the defendant designed or planned
"an improvement to real property" so as to be protected by
the six-year provision of G. L. c. 260, § 2B.[3] We reverse as
we hold that a survey and plan dividing property into lots,
at least where the plan is unrelated to any proposed con-
struction or changes in the topography of the land, is not the
"design" or "planning" of an "improvement to real proper-
ty" within the meaning of G. L. c. 260, § 2B.

The statute does not define "improvement" nor, unlike
some statutes elsewhere, does it specifically include[4] or ex-
clude[5] surveys. Although G. L. c. 260, § 2B, was recently
reviewed in *Klein* v. *Catalano*, 386 Mass. 701 (1982), neither

---

[2] The complaint does not allege any development by the Raffels. In
1977, an additional plan, also attached to the complaint, and also appear-
ing to be prepared for purposes of endorsement under G. L. c. 41, § 81P,
was made by another surveyor who relied on the perimeter boundaries
shown on the defendant's plan. In 1979, a conveyance of certain parcels
shown on the 1977 plan was made to the plaintiff Create and Construct,
Inc. When that plaintiff attempted to clear a lot for development it dis-
covered that the boundaries on the defendant's plan were incorrect and,
as a result, was required to settle with several abutters.

[3] General Laws c. 260, § 2B, as amended by St. 1973, c. 777, § 2,
reads: "Actions of tort for damages arising out of any deficiency or neglect
in the design, planning, construction or general administration of an im-
provement to real property shall be commenced only within three years
next after the cause of action accrues; provided, however, that in no event
shall such actions be commenced more than six years after the perform-
ance or furnishing of such design, planning, construction or general ad-
ministration."

[4] See, e.g., Ark. Stat. Ann. § 37-237 (Supp. 1981); Cal. Civ. Proc. Code
§ 337.1 (West Supp. 1982); Mich. Comp. Laws Ann. § 600.5839 (1968);
Tenn. Code Ann. § 28-3-114 (1980); Wash. Rev. Code Ann. § 4.16.300-
320 (Supp. 1982). See generally, Comment, Limitation of Action Stat-
utes for Architects and Builders, 18 Cath. U. L. Rev. 361, 364-369 (1969).

[5] See, e.g., Haw. Rev. Stat. § 657-8 (Supp. 1981).

that case nor any other Massachusetts case has, as yet, construed the term "improvement" as used in the statute.

New Jersey and Colorado, both of which have similar legislation, have considered the application of their statutes to surveyors' plans. The Supreme Court of New Jersey, although holding the statute inapplicable on other grounds, stated, "There is no reason why . . . a surveyor whose professional work is functionally related to and integrated with a building plan or design, . . . should not fall within the statute." *E. A. Williams, Inc.* v. *Russo Dev. Corp.*, 82 N.J. 160, 169-170 (1980). In that case, the surveyor was hired "to prepare a survey of the premises acquired for the business and to delineate the exact location where a building should be constructed in order that it would be placed in the center of the property." *Id.* at 162. In *Commonwealth Land Title Ins. Co.* v. *Conklin Associates*, 167 N.J. Super. 392, 394 (1979), affirming 152 N.J. Super. 1 (1977), the Appellate Division held[6] that a survey to effect placement of houses, garages and driveways came within the statute as it relates to the design and planning of an improvement. The court declined to decide whether an original perimeter survey, which was not undertaken to locate a building or other improvement, but was performed in connection with the purchase of the tract, was within the statute's protection. See also *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972). In summary, the courts in New Jersey have protected surveyors, but the decisions have all arisen in the context of surveys related to construction projects.

In *Ciancio* v. *Serafini*, 40 Colo. App. 168, 170 (1977), the Colorado Appeals Court refused to rule that a boundary survey alone can constitute an improvement and held that "a survey which is not part of an improvement or building project" is not within the statutory coverage.[7] As pointed

---

[6] But see *E. A. Williams, Inc.* v. *Russo Dev. Corp.*, 82 N.J. at 171-172, indicating that, for other reasons, the case was wrongly decided.

[7] In *McClanahan* v. *American Gilsonite Co.*, 494 F.Supp. 1334, 1346 (D. Colo. 1980), one Federal district judge held that Colorado's statute of

out in that decision, mechanics' lien cases, although of limited application to statutes of repose, also generally hold that only those surveys which are part of a construction project fall within mechanics' lien statutes. *Wilkinson* v. *Rowe,* 266 Ala. 675, 681 (1957) (preparing maps and placing stakes to mark boundary lines not within lien statute). *Daugherty* v. *Gunther,* 88 Wash. 378, 378-379 (1915) (survey unrelated to subsequent construction not within lien statute), compare *Smith* v. *Dekraay,* 217 Or. 436, 446 (1959) (cost of surveying for location of a building within the statute). But see *Nolte* v. *Smith,* 189 Cal. App. 2d 140, 147 (1961) (permitting lien for subdivision survey, but California has a statute specifically covering surveys). We are in accord with these authorities and conclude that a survey and plan for the division of land does not constitute an improvement for purposes of G. L. c. 260, § 2B, at least in circumstances where it is not integrated with a building plan, or a design for construction or other change in the topography of the land.

This holding is in accord with the usual and natural meaning of the word "improvement". See *Klein* v. *Catalano,* 386 Mass. at 705. See also *Kallas Millwork Corp.* v. *Square D Co.,* 66 Wis.2d 382, 386 (1975), adopting the following definition of improvement which appears in Webster's Third New International Dictionary 1138 (1971): "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." See also *Peters* v. *Stone,* 193 Mass. 179, 185 (1906).

The legislative history of G. L. c. 260, § 2B, also suggests this result. 1967 House Doc. No. 2603 (1968 Senate Doc. No. 339), the predecessor to St. 1968, c. 612, which inserted G. L. c. 260, § 2B, extended protection to surveyors as well

---

repose violated the Fourteenth Amendment, but another Federal district judge declined to follow that ruling. *Cudahy Co.* v. *Ragnar Benson, Inc.,* 514 F.Supp. 1212, 1217 (D. Colo. 1981).

as to architects and engineers. The report accompanying Bill No. 339[8] pointed out that "the scope of a land surveyor's duties is generally limited to fixing the form and boundaries of a site" and therefore "much of the content of the report" has no application to that occupation.[9]  1968 Senate Doc. No. 339, at 13.  The report raised a number of specific questions including, "4. Should land surveyors be treated separately?"[10]  *Id.* at 29.  As enacted, G. L. c. 260, § 2B, not only does not give surveyors separate treatment, it does not mention them.  While consideration and rejection by the Legislature of the provision including surveyors does not "control our decision," the legislative history "lends support" to our conclusion that surveyors' services unrelated to a building plan or design contemplating some physical change in the land do not constitute an improvement within the statute.  *Superintendent of Schools of Leominster* v. *Mayor of Leominster,* 386 Mass. 114, 118 & n.11 (1982).

We next examine the complaint to determine whether the judgment of dismissal may be upheld on other grounds.  The applicable standard is that dismissal is not proper unless it appears beyond doubt that the plaintiffs "can prove no set of facts" entitling them to relief, *Woodbridge* v. *Worcester State Hosp.,* 384 Mass. 38, 39 & n.4 (1981).  The allegations that the error was not found until July, 1979, allow the plaintiffs to present evidence that their claims for relief did

---

[8] 1968 Senate Doc. No. 1050, "A Statute of Limitations for Malpractice Against Architects, Engineers and Surveyors."

[9] We note that a number of the policy reasons discussed in 1968 Senate Doc. No. 1050 and in *Klein* v. *Catalano, supra,* for protecting architects and other design professionals do not apply to surveyors.  E.g., architects and other design professions should be encouraged to experiment, *Klein,* at 717, 1968 Senate Doc. No. 339, at 19; design professionals (and probably not surveyors) deal in inexact sciences and are called upon to exercise judgment in order to anticipate factors incapable of precise measurement.  *Klein,* at 718, 1968 Senate Doc. No. 339, at 16-19.

[10] The remaining part of question 4 reads as follows:  "A Michigan statute treats liability of land surveyors in a clause separate from that covering architects and engineers, and Hawaii specifically excludes application of its statute of limitations to surveyors for their own errors in boundary surveys."  *Id.* at 29.

not accrue until that time. See *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982). Thus, counts 1-4 alleging negligence and, also, breach of warranty, see *Klein* v. *Catalano*, 386 Mass. at 719-720 & n.19, withstand the motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Counts 5 and 6, however, which allege damages on account of breach of warranties under the Uniform Commercial Code must be dismissed. The survey plan is not "goods" within G. L. c. 106, § 2-105, inserted by St. 1957, c. 765, § 1. "Contracts whose predominant factor, thrust, or purpose is the rendition of services are not within the scope of art. 2." *White* v. *Peabody Constr. Co.*, 386 Mass. at 132.

The judgment as to counts 1-4 is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*