| | |
|---|---|
| Repairs | $11,772.16 |
| Survey | 1,005.51 (352.86 + 652.65) |
| Salvage | 48,767.78 |

OR–225

| | |
|---|---|
| Repairs | $12,005.00 |
| Survey | 336.83 |
| Drydocking | 369.73 |

OR–3548

| | |
|---|---|
| Repairs | 573.59 |
| Survey | 136.83 |

OR–3830

| | |
|---|---|
| Repairs | 3,600.00 |
| Survey | 336.83 |
| Total Damages | $78,904.26 |

Interest Rate of 10% per annum from the time damages were paid by plaintiff.

The **NEWPORT NATIONAL BANK**

v.

**UNITED STATES of America.**

**Civ. A. No. 82–0380.**

United States District Court, D. Rhode Island.

Jan. 7, 1983.

Tillinghast, Collins & Graham by Steven E. Snow, Providence, R.I., for plaintiff.

U.S. Dept. of Justice by Robert G. Nath, Trial Atty., Washington, D.C., Lincoln C. Almond, U.S. Atty. by Seymour Posner, Asst. U.S. Atty., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is an action brought by the Newport National Bank ("Bank") against the United States, seeking to contest the efficacy of an Internal Revenue Service levy (the "Levy") on the demand deposits of Miracle Enterprises, Inc., a Rhode Island corporation ("Miracle"). The matter is before the Court on the defendant's motion to dismiss the Bank's second amended complaint, or in the alternative, to render judgment on the pleadings. The plaintiff seasonably objected to the motion, briefs were filed, and oral arguments were heard on November 1, 1982; at that time permission was granted for the filing of further briefs (since received).

As the alternative motion is brought under Rule 12, Fed.R.Civ.P. all facts well-pleaded, and the reasonable inferences therefrom, must be taken in the light most favorable to the plaintiff. *DeRosa v. Chicago Title Insurance Co.,* 681 F.2d 66, 68 (1st Cir.1982); *Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir.1976); *Seveney v. United States,* 550 F.Supp. 653, 655 (D.R.I.1982). The motion can be granted only if it clearly appears from the pleadings that no colorable claim exists upon which relief can be granted. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Melo-Tone Vending, Inc. v. United States,* 666 F.2d 687, 688 (1st Cir.1981); *Walgren v. Howes,* 482 F.2d 95, 99 (1st Cir.1973); *Ballou v. General Electric Co.,* 393 F.2d 398, 399 (1st Cir.1968), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971).

It is undisputed that the I.R.S. on April 2, 1979 served notice of the Levy on the Bank. The Levy purported to attach the accounts of Miracle in order to satisfy an indebtedness for tax arrearages allegedly owed by Miracle. The Bank enjoyed the simultaneous custom not only of Miracle, but of two additional corporations coadunate with Miracle (one H. William Simmons being the principal of all three corporate entities).[1] It is likewise uncontroverted that, on February 21, 1979, the Bank had entered into a so-called "Security Checking Agreement" with Miracle and its sister corporations, which embraced five separate accounts for the three corporations.[2] The Security Checking Agreement provided in substance, *inter alia,* that the Bank had the right to cross-charge the accounts for overdrafts, arrearages and the like, and that the Bank had plenary rights of set-off involving all five accounts. In short, the net effect of the Security Checking Agreement, executed by all three corporations, was to enable the Bank to treat them as a unified credit for commercial lending purposes.

On the date of the Levy, the five accounts in the aggregate were in a sub-

---

1. The two other corporations were Howell Restaurants Concepts, Inc. and PBS Provisions, Inc.

2. The five accounts were denominated as follows:

Miracle Enterprises (tax)
PBS Provision Company
Howell Restaurant Concepts (tax)
Howell Restaurant Concepts
Miracle Enterprises

stantial net deficit status;[3] one of Miracle's accounts, however, had a positive balance of $31,060.60 (the "Fund")—and it was (miracle of Miracle!) this account upon which the Levy was placed. The asserted tax liability ($47,968.00) exceeded the amount of the Fund. Two days later, on April 4, 1979, Miracle was petitioned into bankruptcy. It was substantially indebted to the Bank at that time.[4]

The plaintiff contends that the Fund, under the Security Checking Agreement and by reason of its rights of set-off and otherwise, is its property; and it prays in essence that the Court (i) enjoin the defendant from enforcing the Levy; (ii) order release of the Levy; (iii) determine entitlement to the Fund; and (iv) grant other kindred relief. Defendant's motion is predicated, in the main, on (i) an asserted want of subject matter jurisdiction and (ii) a contention that the complaint is time-barred.

Plaintiff's jurisdictional claim is hydra-headed, variously attempting to posit jurisdiction under 28 U.S.C. Sections 1340, 1346, 2201, 2410, and 2463, as well as under Section 7426 of the Internal Revenue Code, 26 U.S.C. Section 7426.[5] The defendant contends that none of the five first-cited statutes confer jurisdiction; and asseverates that, while 26 U.S.C. Section 7426 is indeed the sole and exclusive remedy by which a third party may contest an I.R.S. levy, the instant action has been brought beyond the limitations period imposed by 26 U.S.C. Section 6532(c).[6]

■■■ While a reading of the cases appears to support the government's view of the inapplicability of 28 U.S.C. Sections 1340 and 2410, 1346, 2201, and 2463 [7] to the

---

**3.** The status of the five accounts as of April 2, 1979 was as follows:

| | | |
|---|---|---|
| Miracle Enterprises (tax) | ($ 7,827.45) | (overdrawn) |
| PBS Provision Company | ($35,415.64) | (overdrawn) |
| Howell Restaurant Concepts (tax) | ($26,736.33) | (overdrawn) |
| Howell Restaurant Concepts | $ 4,354.29 | |
| Miracle Enterprises | $31,061.60 | |
| | ($34,563.53) | (net deficit) |

**4.** The debt consisted of a loan, totaling $770,-000., made to Howell Restaurant Concepts, Inc. and Miracle Enterprises, Inc. and was secured by a first mortgage on the properties of certain restaurants owned by the two corporations.

**5.** 26 U.S.C. Section 7426 provides in pertinent part:

If a levy has been made on property or property has been sold pursuant to a levy, and any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

**6.** 26 U.S.C. Section 6532(c)(1) provides:

Except as provided by paragraph (2), no suit or proceeding under Section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action. 26 U.S.C. Section 6532(c)(2) is not applicable to the instant action.

**7.** Plaintiff concedes in its reply memorandum that 28 U.S.C. Sections 1340 and 2410 do not in

and of themselves provide this Court with jurisdiction. The Bank argues, however, that Section 2410's waiver of immunity combined with Section 1340's grant of jurisdiction anent matters of internal revenue provides this Court with an alternative basis for jurisdiction over a third party's challenge to the validity of a tax lien. This alternative basis for jurisdiction is of little utility to the plaintiff unless an expanded statute of limitations is available to the Bank. Thus, the plaintiff implicitly contends that an expanded statute of repose is applicable when a third party attempts to contest a tax lien pursuant to Sections 2410 and 1340. Although a colorable argument can be made for this epiboly, cf. *Aqua Bar & Lounge v. United States Department of Treasury,* 539 F.2d 935, 938–40 (3rd Cir.1976), there is no precedent which would permit this Court to substitute some other statute of limitations for 26 U.S.C. Section 6532(c)(1). *See text infra; see also United Sand and Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 738 (5th Cir.1980).

The bank next asserts that this Court has jurisdiction to adjudicate the case at bar pursuant to 28 U.S.C. Section 1346. This provision is jurisdictional only and does not create any substantive right against the United States or waive the government's right to sovereign immunity. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Duarte v. United States,* 532 F.2d 850, 852 (2d Cir.1976). Thus any right of action must come from some other statutory provision. *Duarte v. United States,* 532 F.2d at 852; *Jackson v. Lynn,* 506 F.2d 233, 236 (D.C.Cir.1974); *see Hummel v. United States,* 494 F.Supp. 1003, 1004 (S.D.Iowa 1980).

facts at bar, it is unnecessary for purposes of disposition of the pending motion to decide these points.

In *Gordon v. United States,* 649 F.2d 837 (Ct.Cl.1981), the Court of Claims was faced with an argument analogous to the one which is so forcefully advanced here by the Bank. In *Gordon,* the plaintiff argued that he could contest an I.R.S. levy under the Tucker Act, 28 U.S.C. Section 1491 *et seq.,* and that the six-year statute of limitations thereunder would apply. As in the case at bar, the government in *Gordon* advocated that the Court of Claims lacked jurisdiction, contending that the plaintiff's sole remedy was to commence action pursuant to 26 U.S.C. Section 7426 in a federal district court. Disagreeing with three circuits, *see United Sand & Gravel Contractors v. United States,* 624 F.2d 733, 738–39 (5th Cir. 1980), *World Marketing Ltd. v. Hallam,* 608 F.2d 392, 394 (9th Cir.1979), *Crow v. Wyoming Timber Products Co.,* 424 F.2d 93, 96 (10th Cir.1970), the Court of Claims held that 26 U.S.C. Section 7426 does not provide the exclusive remedy for a third party to contest a tax lien. *Id.* at 843.

The Court of Claims, however, proceeded nevertheless to reject the plaintiff's assertion as to the available statute of limitations. That tribunal, after reviewing the legislative history of the Federal Tax Lien Act, noted congressional concern with the expeditious resolution of tax lien disputes between the I.R.S. and third parties. *Id.* Thus, the Court of Claims concluded that the Tax Lien Act's statute of limitations, 26 U.S.C. Section 6532(c), and not the longer Tucker Act limitation period, applied to the action. *Id.* at 844.

> The plaintiff next asserts that 28 U.S.C. Section 2463 supports this Court's authority to hear a third party's challenge to an I.R.S. levy. However, the Supreme Court has held that Section 2463 does not grant a district court power to adjudicate the validity of a federal tax lien. *New Hampshire Fire Insurance Co. v. Scanlon,* 362 U.S. 404, 409, 80 S.Ct. 843, 846–47, 4 L.Ed.2d 826 (1960).
>
> In a last-ditch effort to find an alternative basis for jurisdiction, the Bank claims that the Declaratory Judgment Act, 28 U.S.C. Section 2201, confers authority on this Court to entertain the case at bar. The Court is constrained

■ This reasoning is applicable to the case at bar. The second amended complaint, howsoever expansively it is read and howsoever attenuated its prayers for relief, is at bottom an action by a third party to contest a levy asserted against the property of an allegedly delinquent taxpayer. Even if this Court assumes *arguendo* that 26 U.S.C. Section 7426 does not exclude alternative remedies (a conclusion which is of dubious validity and which runs contrary to the weight of authority), the plaintiff's claim nonetheless would be time-barred. Congressional concern over resolving tax lien disputes with all practicable celerity has been made manifest; and this Court finds the reasoning of the *Gordon* court persuasive. Thus, this Court holds that, irrespective of the jurisdictional basis relied upon by a particular plaintiff, the nine month limitations period of 26 U.S.C. Section 6532(c) is applicable to any third party attempt to contest the validity of a tax lien.

The Bank's action was instituted in this Court on June 11, 1982, more than three years after service of the Levy. Accordingly, on the face of the pleadings, the action has been brought out of time.

■ The Bank has, in its briefing in opposition to the pending motion, labored valiantly to proffer an estoppel argument designed to avert the government's assertion of the applicable statute of repose. Estoppel, like fraud, puts the pleader to its mettle by requiring recitation of adequate factual underpinnings for consideration of the applicability of the doctrine; mere conclusions and puffery will not suffice. *See Rubin v.*

> to conclude otherwise. The Act does not create any independent jurisdiction for the federal courts. *Skelly Oil v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950); *Muskegon Piston Ring Co. v. Olsen,* 307 F.2d 85, 88 (6th Cir.1962); *Erickson v. Liberty Mutual Insurance Co.,* No. 81–0295, slip op. at 3 (D.R.I. November 8, 1982). The plaintiff, having been unable to find any other basis upon which this Court can take jurisdiction, is foreclosed from utilizing 28 U.S.C. Section 2201 as an independent source of overcoming the absence of a jurisdictional grant.

*O'Koren,* 621 F.2d 114, 117 (5th Cir.1980); *Melton v. Unterreiner,* 575 F.2d 204, 209 (8th Cir.1978); *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 738 n. 5 (N.D.Ill.1982); *Collins v. PBW Stock Exchange, Inc.,* 408 F.Supp. 1344, 1348 (E.D.Pa.1976). The short answer to this exegetic exercise is that no facts are well-pleaded which suggest a basis for estoppel; ergo, the contention cannot be considered on a motion for judgment on the pleadings. *Bryson v. United States,* 463 F.Supp. 908, 914 n. 4 (E.D.Pa.1978); *Mabra v. Schmidt,* 356 F.Supp. 620, 623 (W.D.Wis.1973); *see Harper v. Cserr,* 544 F.2d at 1122.

While these comments are dispositive of the action in its present posture, it is evident from the Bank's briefing of the issue that it should be given the opportunity, if it so elects, to file a third amended complaint appropriately pleading its best case on the estoppel aspect. For the future guidance of the parties, therefore, the Court will succinctly review the facts contained in the memoranda of the parties and the law apposite thereto.

Plaintiff responded to the Levy, through its attorneys, by telephonic contact with government agents, and by a series of letters, comprising initially stop-gap correspondence dated May 8, 1979 and thereafter a lengthy explication of the plaintiff's position under date of June 27, 1979 (posing therein certain questions to the government). Although the parties apparently remained in verbal communication, the Bank received no immediate written response from the defendant. The nine-month limitations period expired early in 1980, with no definitive action having been taken by the Bank. The Bank's counsel wrote a follow-up letter on December 31, 1980. Thereafter, on February 4, 1981, the I.R.S. served a summons upon the Bank requesting certain documents anent Miracle's accounts. The plaintiff, in complying with the summons, restated its factual and legal position with respect to the Levy in a letter to Revenue Officer Edward Hole dated February 23,

1981. The government did not respond until some time in December of 1981.

■ The doctrine of equitable estoppel, as applied against the government, has been characterized by one court as "odious". *Brown v. United States,* 102 F.Supp. 132, 133 (S.D.Mo.1952). It is, at best, a judicial device to be energized only in unusual or extraordinary circumstances. *Best v. Stetson,* 691 F.2d 42, 44 (1st Cir.1982); *United States v. Rexach,* 558 F.2d 37, 43 (1st Cir. 1977). Courts are particularly chary of government-directed estoppels where, as here, the governmental conduct at issue arises in the context of the implementation of sovereign rather than proprietary functions. *See* Note, "Equitable Estoppel of the Government", 79 Colum.L.Rev. 551, 555–557 (1979) and cases collected therein.

■ Without more, mere inaction, delay or sloth on the part of the government in the conduct of a sovereign function will not support such an estoppel. *Immigration and Naturalization Service v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 283–84, 74 L.Ed.2d 12 (1982). Moreover, in this Circuit, the party seeking the estoppel must show, inter alia, affirmative misconduct upon the part of the government. *Akbarin v. Immigration and Naturalization Service,* 669 F.2d 839, 842 (1st Cir.1982); *Precious Metals Associates, Inc. v. Commodity Futures Trading Commission,* 620 F.2d 900, 908–09 (1st Cir.1980). In *Precious Metals,* the First Circuit held that the failure of a federal agency to respond to inquiries regarding the legality of certain options contracts did not sink to the nadir of affirmative misconduct. *Precious Metals Associates, Inc. v. Commodity Futures Trading Commission,* 620 F.2d at 909. The holding of *Precious Metals* is, in this Court's view, substantially reinforced by the recent teachings of the Supreme Court in *I.N.S. v. Miranda, supra.*

■ Sluggishness and torpor on the part of a governmental agency, standing alone, are, under the decided cases, insufficient to portray affirmative misconduct.[8]

---

**8.** It is perhaps appropriate to note that the Internal Revenue Service is most often criticized for its aggressive stance and the energetic pursuit of its statutory mandate; and that

Even if the plaintiff succeeds in establishing the traditional elements of estoppel, the Bank must be forewarned that the Supreme Court has strongly hinted that even affirmative misconduct may not be sufficient to estop the government from enforcing its laws when matters of the public fisc are involved. *See I.N.S. v. Miranda,* 103 S.Ct. at 283; *Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981).

In accordance with the foregoing, it is hereby ORDERED:

1. Defendant's motion to dismiss may be, and the same hereby is, granted; without prejudice, however, to the right of the plaintiff to file a third amended complaint within twenty days from the date hereof.

2. If no such further pleading is filed within the time aforesaid, then in such event the Clerk shall thereupon forthwith enter judgment for the defendant for the costs.

Joseph J. Petrillo, William S. Hemsley, Jr., Frank A.S. Campbell, Washington, D.C., for plaintiff.

John Oliver Birch, Asst. U.S. Atty., Washington, D.C., for defendants.

many of the agency's detractors pray fervently for a more costive approach on the part of the "revenooers". This case is but one further testimonial to the axiom that irony is no stranger to the law.