**MONTAUP ELECTRIC CO., Plaintiff,**

v.

**OHIO BRASS CORP., Defendant,**

v.

**STONE & WEBSTER ENGINEERING CORPORATION, Third-Party Defendant.**

Civ. A. No. 79–0584 S.

United States District Court, D. Rhode Island.

March 10, 1983.

MEMORANDUM DECISION
AND ORDER

SELYA, District Judge.

Plaintiff, Montaup Electric Company ("Montaup"), a Massachusetts corporation, seeks damages against Ohio Brass Corporation ("Ohio Brass"), an Ohio corporation, for the putative failure in May, 1977, of ground wire brackets manufactured by Ohio Brass and used in the construction of an electric transmission line for plaintiff. Montaup alleges that Ohio Brass breached its agreement and its express and implied warranties to provide brackets with a 15,000 pound strength capacity as specified in the contract for the purchase of the brackets. Montaup further alleges that Ohio Brass negligently furnished the brackets.

Ohio Brass filed a third-party claim against Stone & Webster Engineering Corporation ("Stone"), a Massachusetts corporation, seeking indemnity and/or contribution, based on Stone's alleged negligence in (i) designing the transmission line; (ii) placing the order for the brackets; (iii) supervising the construction. Ohio Brass alleges that its contract with Stone for provision of the brackets did not specify any strength rating.[1] Neither Montaup nor Stone dispute this assertion.

The transmission line at issue was completed by December 27, 1967. No work or services were provided in connection with the project subsequent to July 24, 1969. Montaup filed its complaint in this Court on November 7, 1979; Ohio Brass filed its third-party complaint on June 26, 1981.

The case is before the Court on two motions for summary judgment, one filed by Stone against Ohio Brass and the second filed by Ohio Brass against Montaup. Stone argues that the third-party action brought by Ohio Brass is time-barred. Ohio

Adler, Pollock & Sheehan by Peter L. Kennedy, Russell Pollock, Providence, R.I., for plaintiff.

Gunning, LaFazia & Gnys by Raymond A. LaFazia, Fred T. Polacek, Providence, R.I., for defendant.

Vetter & White by Gordon Cleary, Providence, R.I., for third-party defendant.

---

1. In its trial memorandum filed with the Court on July 23, 1982, Ohio Brass states that Stone ordered a ground wire bracket with chain link "similar to Lapp Catalog # 31710." Ohio Brass then offered, and Stone accepted, Ohio Brass catalog # 82450. The catalog description tions appended to the Trial Memorandum show that these two brackets are very similar. Neither of the descriptions refer to any strength capacity, although each specifies a measurement for "packed weight pounds."

Brass argues that the primary action brought by Montaup is likewise outlawed.

Plaintiff has also filed a motion for leave to amend its complaint so as to assert a direct claim against Stone.[2] The proposed amended complaint discloses that Montaup intends thereby to cite Stone for alleged negligence (i) in design of the transmission line, (ii) in ordering the brackets, and (iii) in supervising the construction, and for breach of its agreement to provide professional engineering services.

## I.

■ In this diversity action, the Court must apply the substantive law of Rhode Island. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *Rusch Factors, Inc. v. Levin*, 284 F.Supp. 85, 87 (D.R.I.1968). Choice of law tenets fall within this mandate. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Mason v. Southern New England Conference Association of Seventh-Day Adventists*, 696 F.2d 135, 136 (1st Cir.1982).

■ Upon careful examination, it appears reasonably certain that Rhode Island courts view limitations questions in kindred manner as other substantive issues giving rise to conflicts of law problems. *Brown v. Church of Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176, 181 n. 10 (1969). *Accord Rusch Factors, Inc. v. Levin*, 284 F.Supp. at 87 n. 1 (applying Rhode Island law). While no reported Rhode Island cases deal squarely with the application of a statute of limitations in a choice of law context, the state supreme court has postulated that " 'the disposition of other issues [issues which do not involve standards of conduct] must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.' " *Brown v. Church of Holy Name of Jesus*, 252 A.2d at 181 n. 10, *citing Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963). This approach comports with the pronouncement of the First Circuit to the effect that statutes of limitations stand, for these purposes, on the same footing as substantive law issues "since they are one aspect of the parties' rights and liabilities." *Templeman v. Baudhuin Yacht Harbor, Inc.*, 608 F.2d 916, 917 (1st Cir.1979). Indeed, the United States Supreme Court has stated as much in holding that "a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly." *Guaranty Trust Co. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).[3]

■ Rhode Island utilizes an interest analysis in determining governing law. Under this analysis, four factors must be taken into account. They are:

1. the place where the injury occurred,
2. the place where the conduct causing the injury occurred,
3. the domicil, residence, nationality, place of incorporation and place of business of the parties, and

---

**2.** When suit was initially brought, Montaup joined Stone as an additional primary defendant. Stone was duly served. On November 30, 1979, a stipulation was executed by counsel for Montaup and for Stone dismissing the complaint against Stone without prejudice. Nothing appears of record to enlighten the uninitiated as to the reasons underlying either the earlier consensual abatement of the action as to Stone or the change of heart evinced by the filing of the instant motion to amend on February 9, 1983.

**3.** Stone's reliance on a 1910 Rhode Island case for the proposition that the statute of limitations to be applied in any case is that of the forum state, *Staples v. Waite*, 30 R.I. 516, 519, 76 A. 353 (1910), blithely ignores decades of development of modern conflicts of law principles, and equally ignores more recent Rhode Island cases setting forth the precepts to be followed in deciding conflicts questions. *E.g., Brown v. Church of Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (1969); *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968).

4. the place where the relationship, if any, between the parties is centered.

*Brown v. Church of Holy Name of Jesus,* 252 A.2d at 179, *citing Restatement (Second) of Conflicts* § 145(2) (Proposed Official Draft 1968).[4] A court should assess these factors in light of five guidelines promulgated for weighing the competing interests in each case:

1. predictability of results,
2. maintenance of interstate and international order,
.3. simplification of the judicial task,
4. advancement of the forum's governmental interests,
5. application of the better rule of law.

*Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, 923, *cert. denied,* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968).

■ When the foregoing considerations are applied to the issue of which statute of limitations should properly govern the instant action, it is clear beyond cavil that Massachusetts law should apply to both the third-party action and to Montaup's primary claim against Ohio Brass.

With respect to Stone's motion for summary judgment against Ohio Brass, the following facts weigh heavily towards the application of Massachusetts law: (i) the ground wire brackets which ostensibly failed were attached to transmission lines located in Massachusetts; (ii) the contract between Stone and Ohio Brass for the supply of these brackets was prepared and executed in Massachusetts; (iii) the brackets were delivered and installed in Massachusetts; and (iv) Stone is a Massachusetts corporation which conducts substantial business within that state. Conversely, Ohio Brass is an Ohio corporation with no greater commercial affinity to Rhode Island than to Massachusetts. Palpably, the legitimate

and compelling interests of the Commonwealth in the subject matter of this litigation far outweigh the competing interests (if any) of the forum state. The relevant Massachusetts statute of limitations must therefore govern Stone's motion for summary judgment.

A similar factual mosaic emerges with respect to Montaup's claim against Ohio Brass. The faulty brackets were attached to transmission lines located in Massachusetts and owned by a Massachusetts corporation (Montaup) doing substantial business there. Montaup's agreement with Stone for the design of the transmission line, ancillary to which the contract for the purchase of brackets was executed, was negotiated and signed in Massachusetts. Again, Massachusetts clearly has interests far more meaningful than those of Rhode Island vis-a-vis Montaup's claim. It follows inexorably that, as with the third-party claim, Massachusetts law must determine the outcome of Ohio Brass' motion against Montaup.

II.

■ Ohio Brass seeks summary judgment based on Montaup's failure to comply with the time limitations imposed by either R.I. Gen.Laws § 9-1-29 or Mass.Gen.Laws Ann. ch. 260, § 2B ("2B").[5] As previously discussed, the relevant Massachusetts statute of limitations controls. The Court concludes, however, that the relevant Massachusetts statute is not § 2B, but rather Mass.Gen.Laws Ann. ch. 106, § 2-318 ("§ 2-318").

§ 2B, by its terms, applies only to "actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration

---

4. These four factors were included in the official Restatement, adopted in 1971. Restatement (second) of Conflict of Laws § 145(2) (1971).

5. Mass.Gen.Laws Ann. ch. 260, § 2B provides: Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration

of an improvement to real property shall be commenced only within three years next after the cause of action accrues: provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration.

of an improvement to real property...." *Id.* The Massachusetts Supreme Judicial Court has held that § 2B grants immunity from suit upon the expiration of the six-year period therein delimited only to architects, engineers, contractors and others involved in the design, planning, construction or general administration of improvements to real property. *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 524–25 (1982). It denies the same protection to materialmen, suppliers, owners, tenants and others in possession or control. *Id.* 437 N.E.2d at 523, 525.

■ Ohio Brass was a supplier of goods used in the construction of the transmission line. The definition of "goods," found in Mass.Gen.Laws Ann. ch. 106, § 2–102, includes the brackets at issue here. *See White v. Peabody Construction Co.,* 386 Mass. 121, 434 N.E.2d 1015, 1021 (1982). As a materialman, therefore, the defendant may not be shielded by the protective armor of § 2B.

■ Thus, the statute of limitations applicable to Montaup's claim against Ohio Brass is § 2–318, which provides, in full:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section. Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby. All actions under this section shall be commenced within three years next after the date the injury and damage occurs.

Montaup's claim against Ohio Brass falls precisely within the foregoing statute.

Montaup alleges that Ohio Brass breached its agreement and its express and implied warranties to provide goods, the brackets, with an ultimate strength of 15,000 pounds, or alternatively, that it was negligent in furnishing the brackets. § 2–318 applies to all injuries occurring after its effective date, even if the sale and purchase of the goods occurred prior thereto. *Cameo Curtains, Inc. v. Philip Carey Corp.,* 11 Mass. App. 423, 416 N.E.2d 995, 997 (Mass.App. 1981). *See Hoffman v. Howmedica, Inc.,* 373 Mass. 32, 35–36, 364 N.E.2d 1215, 1217 (1977). Therefore, it is of no consequence that the brackets were purchased and received in 1967, some seven years before the enactment of § 2–318 in substantially its present form in 1974. *See Cameo Curtains, Inc. v. Philip Carey Corp., supra.*

The three year limitation mandated by § 2–318 is measured from "the date the injury *and damage occurs.*" *Id.* 416 N.E.2d at 997. Prior to the 1974 amendment, the relevant statute had required that actions under § 2–318 be brought within two years of the date of the injury. The *Cameo* court has interpreted the 1974 amendment "as extending the beginning of the limitations period from the time when the injury is first perceived to the time when the damage flowing from the injury can be fairly estimated." *Id.* The Massachusetts Supreme Judicial Court has expressly declined to pass on the statutory analysis so undertaken by the *Cameo* court. *White v. Peabody Construction Co.,* 434 N.E.2d at 1021 n. 9.

■ This Court need not decide, however, whether, if directly confronted by the question, the Supreme Judicial Court of Massachusetts would adopt the *Cameo* interpretation of § 2–318. Montaup's claim against Ohio Brass falls comfortably within the three-year period, whether that time is computed from the date of the failure in May, 1977, or from the date on which "the damage flowing from the injury can be fairly estimated." *Cameo Curtains, Inc. v. Philip Carey Corp.,* 416 N.E.2d at 997.[6] *See*

---

**6.** These two dates may very well be the same, but that bridge need not be traversed in passing upon the matters which are here *sub judice.*

*Hoffman v. Howmedica, Inc.,* 364 N.E.2d at 1217–18. As Montaup's suit against Ohio Brass is timely under § 2–318, Ohio Brass' motion for summary judgment based on a statute of limitations defense must be denied.[7]

## III.

■ Ohio Brass' claim against Stone is one for indemnity and/or contribution, based on Stone's alleged negligence in designing the transmission line, ordering the brackets and/or supervising the construction of the line. Under Massachusetts law, Ohio Brass has a right of contribution only if Stone can be held directly liable to Montaup. *Liberty Mutual Insurance Co. v. Westerlind,* 374 Mass. 524, 373 N.E.2d 957, 959 (1978); Mass.Gen.Laws Ann. ch. 231B § 1.[8]

■ In the instant case, Montaup's claim against Stone is barred by § 2B. That section applies, on its face, to "actions of tort ... arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property." It outlaws any action commenced "more than six years after the performance or furnishing of such design, planning, construction or general administration", regardless of when the alleged injury occurred. *Id.* "[I]ts effect is to abolish or abrogate a remedy in tort if the person is injured more than six years

after the defendant's performance of certain activities connected with an improvement to real property." *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d at 516 n. 3.

Any claim Montaup made against Stone would therefore be barred by § 2B, assuming that the construction of the transmission line is an "improvement to real property."[9] In briefing its summary judgment motion against Montaup, Ohio Brass argues persuasively that the construction of such a facility is an improvement to real property; the defendant is now hoist by its own forensic petard.[10] The Court agrees with such a definition of an "improvement to real property", notwithstanding the exhortation that *Raffel v. Perley,* 14 Mass.App. 242, 437 N.E.2d 1082 (1982) precludes such an interpretation.

In *Raffel v. Perley,* a Massachusetts appeals court construed the phrase "improvements to real property" as used in § 2B, to exclude a survey and plan for the division of land "in circumstances where it is not integrated with a building plan, or a design for construction or other change in the topography of land." *Id.* 437 N.E.2d at 1084. The court then explained:

This *holding* is in accord with the usual and natural meaning of the word "improvement". [cite omitted] *See also Kallas Millwork Corp. v. Square D. Co.,* 66 Wis.2d 382, 386, 225 N.W.2d 454 (1975), adopting the following definition of im-

---

7. Assuming *arguendo* that § 2–318 did not apply to Montaup's claim against Ohio Brass, the relevant statute of limitations would appear to be Mass.Gen.Laws Ann. ch. 106, § 2–725 ("§ 2–725") which provides a four year limitation on actions for "breach of any contract for sale...." § 2–725(2) specifically provides that a breach of warranty for future performance, presumably the type of warranty involved in the instant action, "accrues when the breach is or should have been discovered." Montaup's claim against Ohio Brass was filed well within four years of the date of injury, so Ohio Brass' statute of limitations defense would still be bootless.

8. Mass.Gen.Laws Ann. ch. 231B, § 1 provides in material part:
   (a) Except as otherwise provided in this chapter, where two or more persons become *jointly liable in tort* for the same injury to

person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.
   (b) The right of contribution shall exist only in favor of a joint *tortfeasor,* hereinafter called tortfeasor, who has paid more than his pro rata share of the common liability.... Emphasis added.

9. It is settled law in the Commonwealth that § 2B applies to work completed before the statute took effect. *Klein v. Catalano,* 437 N.E.2d at 518.

10. As this Court recently observed in *Newport National Bank v. United States,* 556 F.Supp. 94 at n. 9 (D.R.I.1983), "irony is no stranger to the law." This is but another example of that truism.

provement which appears in Webster's Third New International Dictionary 1138 (1971): "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

*Id.* (Emphasis added.)

From this passage, it is plain that the *Raffel* court held by implication that an "improvement to real property" includes a change in the topography of the land. *Id.* The *Kallas* case and its concomitant dictionary definition, cited with approval in *Raffel,* buttress such a reading. The construction of electrical transmission lines is such a change in topography.

It cannot be gainsaid that the erection of electrical transmission lines comprises a permanent addition to real property; that such a project involves the expenditure of labor and of money; and that completion thereof makes the property more useful or valuable. *See Mora-San Miguel Electric Cooperative, Inc. v. Hicks & Ragland Consulting & Engineering Co.,* 93 N.M. 175, 598 P.2d 218, 220 (1979).[11] If the real property at issue is more narrowly defined as Montaup's power line easements, the conclusion becomes even more compelling that the construction of the line represents an improvement to the easements. Montaup uses the line in providing a precious and utilitarian commodity—electricity to its customers. The cost of construction would, from an accounting perspective, have to be capitalized. It cannot, therefore, be contended that the transmission line neither makes the easements more useful nor more valuable.[12]

■ As any claim Montaup made directly against Stone would be barred by § 2B, it follows that Ohio Brass cannot prevail on

a claim for contribution against Stone. Stone's motion for summary judgment against Ohio Brass on the latter's claim for contribution must therefore be granted.

Ohio Brass' claim against Stone for indemnity requires a different analysis.

■ Under Massachusetts law, a contract-based right of indemnification exists only if there is a valid and binding contract between the indemnitor and indemnitee in which such a right is expressed, or from which it can fairly be implied. *Federal Deposit Insurance Corp. v. Caolo,* 478 F.Supp. 1185, 1186 (D.Mass.1979); *H.P. Hood & Sons, Inc. v. Ford Motor Co.,* 370 Mass. 69, 77, 345 N.E.2d 683, 689 (1976). A right of indemnity may also exist in favor of a party who incurs tort liability as a result of the tortious acts of another. *Federal Deposit Insurance Corp. v. Caolo,* 478 F.Supp. at 1186. Indemnity will be permitted, however, "only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another." *Garbincius v. Boston Edison Co.,* 621 F.2d 1171, 1176 (1st Cir.1980); *Toman v. Underwriters Laboratories, Inc.,* 532 F.Supp. 1017, 1019 (D.Mass.1982); *Federal Insurance Corp. v. Caolo,* 478 F.Supp. at 1186; *Stewart v. Roy Bros., Inc.,* 358 Mass. 446, 459, 265 N.E.2d 357, 365 (1970). *See also Araujo v. Woods Hole,* 693 F.2d 1, 2 (1st Cir.1982), for a general discussion of the right to indemnification. Thus, apart from any contractual theory, Ohio Brass will have a right to indemnity against Stone only if Ohio Brass did not join in the negligent act but became liable in consequence of it. *E.g., Stewart v. Roy Bros., Inc.,* 265 N.E.2d at 365. Ohio Brass cannot, however, meet this burden in the present case.

The undisputed facts alleged in the pleadings show that Stone ordered the brackets from Ohio Brass on behalf of Montaup.

---

11. *Cf. Turner v. Marable-Pirkle, Inc.,* 238 Ga. 517, 233 S.E.2d 773 (1977), which held that the change of equipment on an existing power line was not an improvement to real property within the meaning of a Georgia statute similar to § 2B.

12. *See Adair v. Koppers Co.,* 541 F.Supp. 1120, 1125 (N.D.Ohio 1982), and *Brown v. Jersey Central Power & Light Co.,* 163 N.J.Super. 179, 394 A.2d 397, 406 (1978), for compendia of cases recognizing that the phrase "improvement to real property" encompasses structures other than buildings.

Ohio Brass supplied those brackets. The most that can be said in favor of Ohio Brass' claim is that it supplied exactly the type of brackets ordered by Stone: that it was Stone who allegedly ordered the wrong type of brackets in the first instance. By supplying the brackets, however, Ohio Brass participated in the alleged negligent act of Stone. If the defendant is liable at all to the primary plaintiff (Montaup), its liability cannot be said in any rational way to be purely "vicarious" or "derivative" vis-a-vis the ostensible negligence of Stone. Rather, two acts (one Stone's, one the defendant's) are conjoined in the chain of events. Based on these facts, Ohio Brass cannot make a valid claim for tort-based indemnity under Massachusetts law. *See Garbincius v. Boston Edison Co.,* 621 F.2d at 1176; *Toman v. Underwriters Laboratories, Inc.,* 532 F.Supp. at 1019; *Stewart v. Roy Bros. Inc.,* 265 N.E.2d at 365.

█ Nor does Ohio Brass breathe new life into its indemnity thesis by a consideration of possible contract-based theories. Nothing in the third-party complaint, the court papers, or the briefs of the parties even remotely suggests that Stone was under any express contractual obligation to hold Ohio Brass harmless. The record is similarly devoid of any factual basis for indemnification implied by contract. In point of fact, there was no contract or contracting relationship between Ohio Brass and Stone; Ohio Brass was a vendor to Montaup, and Stone placed the order acting not for its own account, but strictly as an agent for its disclosed principal (Montaup). With the facts so agglomerated, Stone cannot be considered by this Court to have been itself a party to any contract which Ohio Brass might have enjoyed. *See Liberty Mutual Insurance Co. v. Westerlind,* 374 Mass. 524, 373 N.E.2d 957, 959 (1978); *H.P. Hood & Sons, Inc. v. Ford Motor Co.,* 370 Mass. 69, 77, 345 N.E.2d 683, 689 (1976). By the same reasoning, Ohio Brass did not, merely by furnishing materials, become a party to the contract which existed between Montaup and Stone as to the provision of engineering supervision. The absence of a valid and binding contract to which both

the defendant and the third-party defendant were parties renders contract-based theories of indemnity unavailable under Massachusetts law. *See Federal Deposit Insurance Corp. v. Caolo,* 478 F.Supp. at 1186; *H.P. Hood & Sons, Inc. v. Ford Motor Co.,* 345 N.E.2d at 689.

█ In any event, even if the Court were to assume *arguendo* that a colorable claim for indemnity otherwise existed, Ohio Brass would still be foreclosed from pursuit of indemnification against Stone by the operation of § 2B. It is true that, on its face, § 2B expressly provides a limitation only for actions of tort. In *Klein v. Catalano,* 437 N.E.2d at 525–26, however, the Massachusetts court held that § 2B bars breach of warranty claims as well when the warranty only covers the exercise of the standard of care required of the particular profession. *Id.* The *Klein* court reasoned that "the elements of the plaintiff's action for negligence and breach of implied warranty are the same." *Id.* 437 N.E.2d at 526.

> The Legislature enacted G.L. c. 260, § 2B, to limit the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real property. (Cite omitted.) If the plaintiff could maintain his action for breach of implied warranty, the statute would not have its intended effect. The plaintiff whose negligence claim is barred by G.L. c. 260, § 2B, could bring essentially the same action under a breach of implied warranty theory. This is a result we cannot tolerate.

*Id.*

The reasoning of the *Klein* court is apposite to the case at bar. Ohio Brass terms its third-party complaint against Stone an action for indemnity or contribution; yet, Stone's conduct giving rise to this claim is undeniably conduct which marches to the beat of the § 2B drum, comprising as it does Stone's purported "deficiency or neglect in the design, planning, construction or general administration of an improvement to real property...." Thus, if Ohio

Brass were allowed to maintain its action against Stone, notwithstanding the proscription of § 2B, the intent of the Massachusetts legislature to limit the liability of an engineering company, such as Stone, would be badly mangled, if not completely thwarted. After all, Stone's *raison d'etre* in regard to this project was its engagement by Montaup to utilize professional expertise in designing and supervising the construction of the electric transmission line. For the foregoing reasons, Stone's motion for summary judgment against Ohio Brass on the latter's indemnity claim must also be granted.

### IV.

 With respect to the plaintiff's motion to amend its complaint so as to include direct allegations of negligence and for breach of contract against Stone, the Court recognizes that under the liberal standards of Fed.R.Civ.P. 15(a), leave to amend should be freely given under most circumstances. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Ondis v. Barrows,* 538 F.2d 904, 909 (1st Cir.1976); *Farkas v. Texas Instruments, Inc.,* 429 F.2d 849, 851 (1st Cir.), *cert. denied* 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1970). The fact that such an amendment, if permitted, would be an exercise in futility is accepted, however, as a ground for denial of such a motion. *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230; *Farkas v. Texas Instruments, Inc.,* 429 F.2d at 851. Leave to amend should not be granted where the effect of the amendment would be to place before the court a claim upon which relief patently could not be granted. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Development Fund Co., Inc.,* 608 F.2d 28, 42 (2d Cir.1979); *Bricker v. Crane,* 468 F.2d 1228, 1233 (1st Cir.), *cert. denied,* 410 U.S. 930, 35 L.Ed.2d 592 (1972); *Breier v. Northern Cal. Bowling Proprietors' Ass'n,* 316 F.2d 787, 790 (9th Cir.1963).

 In the case at bar, the considerations set forth in part I of this opinion, *ante,* establish beyond peradventure of doubt that Massachusetts law would control the substance of Montaup's proposed claim against Stone; the substantive analysis of the law of the Commonwealth heretofore explicated renders it equally clear that § 2B would be directly applicable to the resurrected claim by the owner of the transmission lines against its engineering firm. Inasmuch as more than fifteen years have elapsed between the last rendition of engineering services and the filing of the motion for leave to amend, the proposed amended complaint would surely be time-barred as to Stone.[13] The plaintiff's motion for leave to file an amended complaint must, accordingly, be denied.

IT IS SO ORDERED.

**13.** Assuming *arguendo* that plaintiff's initial joinder of Stone as a party-defendant in November of 1979 somehow worked a tolling of the statute of repose notwithstanding the ensuing voluntary dismissal (*see* n. 2, *supra* ), any such claim by Montaup against Stone would even as of that date have been out of time.