Argued and submitted June 24, defendant's motion to strike denied; plaintiff's motion to supplement record denied; affirmed on appeal; reversed and remanded on cross-appeal October 26, 1994, petition for review denied February 28, 1995
(320 Or 587)

**EMMERT INDUSTRIAL CORPORATION,**
an Oregon corporation,
*Appellant - Cross-Respondent,*

*v.*

**C. Nadine SANDERS,**
aka Ciona Nadine Sanders,
aka Nadine Ortiz Sanders,
aka Nadine C. Ortiz,
and Benton W. McGinnis, II,
*Respondents - Cross-Appellants,*

*and*

**NADINE SANDERS TRUST,**
Ciona Lael Sanders, Trustee,
Commercial Adjustment Co.,
and Accounts Management Co.,
*Defendants.*

(91-2039; CA A79600)

883 P2d 1304

Frank G. Patrick argued the cause for appellant - cross-respondent. With him on the briefs was David N. Allen.

Harry D. Ainsworth argued the cause and filed the briefs for respondents - cross-appellants.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff appeals from a judgment in favor of defendants in this action for breach of contract, breach of implied contract, conversion[1] and foreclosure of a construction lien. Defendants[2] cross-appeal the denial of attorney fees. We affirm on the appeal and reverse on the cross-appeal.

Plaintiff's business is moving buildings. On May 14, 1986, it entered into a contract with defendant Sanders (defendant) to raise a house that she owns, construct a foundation under the house, and then lower the house. According to the contract, defendant was to pay plaintiff $27,910 at the time the contract was executed. Defendant did not pay. Plaintiff nonetheless began work and raised the house. In September, 1986, plaintiff stopped work, leaving the house on supporting beams without a foundation. More than four years later, on December 27, 1990, plaintiff filed a construction lien under ORS 87.035 for the amounts owed by defendant under the contract.

In February, 1991, plaintiff brought this action. Two months later, in April, 1991, defendant filed a petition for relief under the Bankruptcy Code. Plaintiff was a named creditor and appeared in the bankruptcy case. In September, 1991, defendant received a release from liability for all dischargeable debts. In September, 1992, she filed affirmative defenses in this action, including discharge in bankruptcy.

Trial was to the court. The parties stipulated that the construction lien was not discharged in bankruptcy. The court held that defendant's discharge "wiped out" plaintiff's claims for breach of contract, breach of implied contract and conversion and that plaintiff did not timely file its construction lien.

■ Plaintiff first assigns error to the trial court's finding that defendant's discharge in bankruptcy precluded it from

---

[1] Plaintiff does not challenge the judgment on the conversion claim.

[2] It appears from the record that defendant McGinnis is Sanders' grandson and a minor. He was a signer of the contract. Plaintiff makes no separate argument that, if the judgment in favor of Sanders is affirmed, the judgment in favor of McGinnis should still be reversed. No other defendant is involved in this appeal.

enforcing the contract against defendant's property. It contends that, under provision 6 of the contract, it had a "contractual lien" on the property and that defendant's release from personal liability did not avoid that lien.[3] As defendant succinctly summarizes plaintiff's argument:

> "Plaintiff contends that by identifying a specific asset of defendant Sanders and limiting its claim to the value of that asset that it converts an action in personam against Sanders to an action in rem against the identified property. Plaintiff contends further that once it has converted its unenforceable personal action against Sanders into an action against Sanders' property, plaintiff is free to enforce its prepetition debts against Sanders' property."

Defendant argues that we may not address plaintiff's argument, because it is based on a theory and on evidence that were not presented to the trial court.

■■   We agree that the issue of plaintiff's right to proceed against the property on its "contractual lien" was not preserved. When a case is tried on a certain theory, a different theory cannot be pursued on appeal. *Millers Mut. Fire Ins. Co. v. Wildish Const. Co.*, 306 Or 102, 107, 758 P2d 836 (1988). In determining whether a theory has been presented, courts look to the pleadings, the prayer and the arguments at trial. *Friesen v. Fuiten*, 257 Or 221, 231, 478 P2d 372 (1970). Nonetheless, plaintiff did not plead a claim for foreclosure of a contractual lien, and made no argument to the trial court on that ground. Plaintiff contends that its failure to pursue the remedy at trial does not preclude it from raising "this consistent remedy on appeal."

Plaintiff's effort to frame its position as an "alternative remedy" does not change the fact that it did not assert a claim for foreclosure of a contractual lien or pray for that remedy. Plaintiff is asking us to reverse a judgment on the basis of a theory argued for the first time on appeal. We will

---

[3] Provision 6 reads:

"Mover is hereby granted a general and continuing lien for all amounts which Owner shall have agreed to pay Mover, such lien to become a charge against both the Building and the property to which the Building is intended to be moved. This contractual lien shall not be considered to be in derogation of any additional liens available to Mover. Mover is authorized to take such steps as it shall deem necessary or desirable in order to give such lien its fullest effect."

not address the argument. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). The trial court did not err in entering judgment against plaintiff on its claims for breach of contract and breach of implied contract.

■ Plaintiff next assigns error to the trial court's finding that plaintiff's filing of the construction lien in December, 1990, was not timely. We review *de novo. B & D Investment v. Petticord*, 48 Or App 345, 617 P2d 276, *rev den* 290 Or 302 (1980). It is undisputed that, after the fall of 1986, plaintiff did not return to the job site, expend any labor on the project or supply any new materials. As pertinent under ORS 87.035(1),

> "[e]very person claiming a lien created under ORS 87.010(1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier."

ORS 87.045 provides, in part:

> "(1) The completion of construction of an improvement shall occur when:
>
> "* * * * *
>
> "(c) The improvement is abandoned as provided by subsection (5) of this section.
>
> "* * * * *
>
> "(5) Except as provided in subsection (6) of this section, an improvement is abandoned:
>
> "(a) On the 75th day after work on the construction of the improvement ceases[.]"

The trial court held that there had been no abandonment, because the parties did not intend to abandon the venture.[4] It also held that provision 4 of the contract, which required defendant to pay $10 for each day that she defaulted on the contract, was a provision for liquidated damages, not a rental agreement. That provision reads:

---

[4] A finding of abandonment requires an intent to abandon the project as well as a cessation of labor. *See, e.g., Eastern & Western L. Co. v. Williams et al.*, 129 Or 1, 276 P 257 (1929). Defendant argues that that rule was in effect only until enactment of ORS 87.045(5) and that intent is not now needed for statutory abandonment to occur under ORS 87.045(5)(a). Because of our finding that the lien was not timely filed within 75 days after work ceased, we need not decide that issue.

"If all the foregoing terms and conditions shall not have been complied with by Owner, Owner shall be deemed to be in default and shall pay Mover, TEN and NO/100 DOLLARS ($10.00) for each day, or fraction thereof, following the ___ (30) day period, as hereinabove described, that such default shall continue."

Plaintiff argues that the court was correct in finding that there was no abandonment, and that that finding precluded the court from holding that the lien was not timely filed. It contends that because, under ORS 87.045, abandonment is equivalent to completion of construction, and completion initiates the filing period under ORS 87.035, the court had to find abandonment before it could determine that the 75-day period began to run. However, abandonment is not the only measure of the statutory time. Under ORS 87.035(1), the 75 days for filing is triggered *either* by ceasing to furnish labor, rent equipment or provide material *or* by completing the project, whichever event is earlier.

Plaintiff also argues that the court erred in not finding that provision 4 was an agreement that defendant would "rent" equipment, namely, the steel supports and cribbing left to support the house when worked stopped. We agree with the trial court that provision 4 provides for liquidated damages. Generally, a liquidated damages clause sets the amount of damages to be recovered by a party in case of the other party's failure to perform as agreed. *Illingworth v. Bushong*, 297 Or 675, 688 P2d 379 (1984); *see also DiTommaso Realty, Inc. v. Moak Motorcycles, Inc.*, 309 Or 190, 785 P2d 343 (1990). Under provision 4, the $10 payment begins when the owner defaults and the owner must pay for every day of default. Payment is not dependent on the presence or use of equipment or whether the project is delayed. Provision 4 makes no mention of rental. We conclude that plaintiff did not rent equipment to defendant after it stopped work in September, 1986.

We also reject plaintiff's oblique contention that it continued to furnish equipment by leaving the beams. Equipment left at the site may be relevant as to whether a party intended to abandon a project. *See Smith v. DeKraay*, 217 Or 436, 342 P2d 784 (1959). However, plaintiff cites no authority to demonstrate that leaving equipment on a site for over four

years is equivalent to "furnishing" materials. That interpretation creates the possibility of an indefinite time during which a lien could be filed against property. We agree with defendant that such a conclusion would create uncertainty for owners and mortgagees about the possibility of contractors' claims and would undermine the statutory scheme that attempts to balance the interests of owner, mortgagees, contractors and third parties.

Plaintiff here did not furnish materials or labor, or rent equipment, after September, 1986. The 75-day filing period under ORS 87.035(1) began to run at that time. Plaintiff's filing of the construction lien more than four years later was not timely, and the trial court did not err in entering judgment for defendants on the construction lien claim.

On cross-appeal, defendants Sanders and McGinnis assign error to the trial court's denial of costs and attorney fees. The court's only stated reason for denying fees was that it felt that Sanders was in court with bad faith, and it refused to award fees to any party.

Sanders argues that the court did not have the discretion under ORS 20.094 to deny her fees for the contract and conversion claims. That statute provides:

"In any action or suit on a debt, the court shall award the debtor who is a defendant a reasonable attorney fee at trial and on appeal, in addition to disbursements, if the defendant prevails on the grounds of discharge in bankruptcy."

Plaintiff argues that the statute does not apply in this situation because its claims were against the property. However, plaintiff did not limit its claim to foreclosure of the construction lien, which was not discharged in bankruptcy. It brought claims for breach of contract and conversion. Those claims were alleged against defendant personally, not against the property, and they were discharged.

Plaintiff also argues that, under ORCP 68B, the trial court had the discretion not to award fees. However, defendant is entitled to fees under ORS 20.094, not under ORCP 68B. The language of ORS 20.094 is mandatory: the court *shall* award fees where, as here, the debtor is the defendant and prevails on the grounds of discharge in bankruptcy. Sanders was entitled to attorney fees under that statute.

■ Sanders and McGinnis[5] argue that the court did not have the discretion to deny fees on the lien foreclosure. They rely on ORS 87.060(5), which provides, in part:

"In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien."

Plaintiff argues that fees should not be allowed because no money judgment was awarded. However, that is not a requirement under ORS 87.060(5). A party need only prevail on the issues of the validity and foreclosure of the lien to be entitled to an award of attorney fees. *Austin v. Carver*, 85 Or App 529, 737 P2d 639 (1987). Defendants did so here and the court erred in not allowing fees.

Our disposition of the appeal makes it unnecessary to address the remaining assignments of error on the cross-appeal. Plaintiff filed a motion to supplement the record with certain documents from the bankruptcy proceeding. Sanders and McGinnis opposed the motion and moved to strike plaintiff's first assignment of error. By order, we have previously denied plaintiff's motion as to some of the documents, and deferred ruling on the remaining documents and on defendants' motion to strike until after oral argument. Defendants' motion is denied; because of our ruling on plaintiff's first assignment of error, we deny the motions as to the remaining documents.

Defendants' motion to strike denied; plaintiff's motion to supplement record denied; affirmed on appeal; on cross-appeal, reversed and remanded for determination of reasonable attorney fees and costs to Sanders under ORS 20.094 and to Sanders and McGinnis under ORS 87.060(5).

---

[5] McGinnis filed a counterclaim for fees under the statute. The judgment denies fees and costs to all parties.