Argued and submitted January 31, affirmed March 8, 2000

## ROSEBURG INVESTMENTS, LLC,
*Appellant,*

*v.*

## HOUSE OF FABRICS, INC.,
and Fabri-Centers of America, Inc.,
dba Jo-Ann Fabrics and Crafts,
*Respondents.*

## (98CV1916ET; CA A103849)

995 P2d 1228

Charles R. Markley argued the cause for appellant. With him on the briefs was Greene & Markley, P.C.

Donald J. Churnside argued the cause for respondent. With him on the brief was Gaydos, Churnside & Baker, PC.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

This appeal arises from a commercial forcible entry and detainer (FED) action in which plaintiff sought to recover possession of premises leased to defendants for use as a fabric store. ORS 105.110.[1] The trial court entered judgment in favor of defendants, and plaintiff appeals. We affirm.

The following facts are not in dispute. In 1989, plaintiff's predecessor leased to defendants premises located in the Garden Valley Shopping Center in Roseburg. The written lease required defendants to make monthly rent and monthly common area maintenance (CAM) expense payments. According to the lease, CAM charges reflected "on a pro rata basis the reasonable costs of operating and maintaining the common areas" of the shopping center. The lease required defendants to pay estimated CAM charges each month in advance and, at the end of each year, plaintiff was required to furnish defendants with a written statement itemizing the actual CAM costs for the shopping center and defendants' pro rata share of those costs. If defendants overpaid their pro rata share on an annual basis, then the lease obligated plaintiff to refund the difference; alternatively, if defendants underpaid, then they were obligated to make up the difference. The lease afforded defendants the "right to audit [plaintiff's] books and records regarding common area charges."

In October 1996, defendants advised plaintiff in a letter that their auditors had determined that defendants were overcharged $6,161 in CAM expenses. Defendants requested a refund or credit for the alleged overpayment. Plaintiff apparently did not respond to defendants' request at that time. In August 1997, defendants renewed the request in a further letter. Plaintiff responded that the "$6,161 obligation * * * was settled and paid to [defendants] * * *. The sum is not owed." Plaintiff also warned defendants not to

---

[1] ORS 105.110 provides:

"When a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and possession is held by force, the person entitled to the premises may maintain in the county where the property is situated an action to recover the possession of the premises in the circuit court or before any justice of the peace of the county."

"withhold rent as an offset. * * * Any [nonpayment] or setoff * * * will be treated as a breach, and eviction proceedings will be commenced."

Defendants took the position that they had not been reimbursed for the alleged CAM overpayment and, despite plaintiff's warning, withheld an equal amount from their total payment each month from October 1997 through January 1998, for a total of $6,161. During those months, defendants' payment was in an amount not less than the "minimum rent" required by the lease. Pursuant to its own accounting practices, plaintiff first applied defendants' payments to CAM charges and then applied the remaining amount to rent. That allocation resulted in an alleged underpayment of rent in the amount of $6,161.

After January 1998, defendants resumed making the full monthly payments to plaintiff. Plaintiff notified defendants, in a letter dated May 4, 1998, that defendants were "in default due to [their] failure to pay [their] rent when due * * *." The notice also stated that if the claimed default was not remedied within 20 days, then plaintiff would seek to recover possession of the premises. Defendants did not pay the disputed amount and, on June 4, 1998, plaintiff served defendants with a notice to vacate the premises. When defendants did not comply, plaintiff initiated this FED proceeding.

At trial, plaintiff filed a memorandum that explained its theory of the case as follows:

### "A. Lease Terminated for Non-Payment of Rent

"Under Oregon law failure of the tenant to pay the *rent* in a timely manner, within the terms of the lease, 'operates to terminate the tenancy.' ORS 91.090. The rule is strictly enforced pursuant to FED proceedings. * * * A late tender of the *rent* is insufficient to reinstate the lease. * * *

"*The evidence in this case will show that Defendants failed to pay the rent due under the lease.* Plaintiff gave Defendants the 20 day notice called for under the terms of the lease. When Defendants failed to pay the sum due * * *, 'the tenancy is terminated' and Defendants therefore hold the premises 'with force.' ORS 105.115. Plaintiff is therefore entitled to bring this FED proceeding. ORS 105.110.

**"B.   Application of Payments**

"The evidence will show that Defendants are obligated to pay * * * to Plaintiff: Minimum Rent * * *; [and] common area maintenance ('CAM') charges * * *. The evidence will show that on at least two occasions Defendants have paid an amount which is less than the total agreed upon amount. In those instances Plaintiff has credited Defendants' payment first to CAM charges * * * with the remainder applied to rent. A creditor which is owed several debts is entitled to apply payments as the creditor sees fit. *Fowler v. Courtemanche*, 202 Or 413 (1954). *As a result, the rent is unpaid.*" (Boldface in original; emphasis added.)

That memorandum plainly articulated a single legal theory: Defendants failed to pay rent, which terminated their tenancy pursuant to ORS 91.090,[2] which, in turn, caused defendants to hold the premises "with force" under ORS 105.115. Therefore, plaintiff asserted, it was entitled to recover possession of the premises pursuant to ORS 105.110.

In its opinion letter, the trial court stated that the "central issue" in the case was the determination whether the alleged deficit in payments constituted unpaid "rent." The court found that each of the monthly payments from October 1997 through January 1998 exceeded the amount of "minimum rent required by the lease"; it also concluded that plaintiff was required to apply those payments to *rent*—rather than CAM—because defendants' conduct made clear that they intended to apply their "short" payments to rent. The trial court therefore concluded that defendants were not in default due to nonpayment of rent and entered judgment in favor of defendants.

After receiving the court's decision, plaintiff filed a motion for a new trial. Plaintiff argued that, in order to prevail, it was only required to prove that defendants were in

---

[2] ORS 91.090 provides:

"The failure of a tenant to pay the rent reserved by the terms of the lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate the tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

default based upon a breach of any condition or covenant of the lease. Plaintiff contended that the basis of defendants' alleged default—whether in failing to pay CAM or, alternatively, nonpayment of rent—was immaterial to plaintiff's right of recovery. The trial court denied plaintiff's motion, reasoning that:

> "At trial, [p]laintiff proceeded on the theory [that it] was entitled to possession of the premises because [d]efendant was in default on rent, specifically relying on ORS 91.090. This court examined the facts and concluded that there was no rent owing. Plaintiff now requests a new trial to reexamine the facts under a different theory—that [p]laintiff is entitled to relief because [d]efendant breached a covenant of the lease. This issue was not raised at trial, and is not a proper ground for a new trial." (Citations omitted.)

This appeal followed.

Plaintiff renews, in two related assignments of error to the trial court's judgment, essentially the same arguments that it made in its motion for new trial. Defendants reply that, irrespective of the sufficiency of the evidence to prove another theory, plaintiff is bound by its legal theory at trial. Defendants argue that the trial court correctly understood plaintiff's exclusive trial theory to be that defendants were in default for failure to pay *rent*. We agree with defendants.

When possession of leased property is unlawfully "held by force," the landlord may maintain a FED action to recover possession. ORS 105.110. Causes of "unlawful holding by force" include:

> "(a)  When the *tenant* or person in possession of any premises *fails or refuses to pay rent* within 10 days after it is due under the lease or agreement under which the tenant or person in possession holds, or to deliver possession of the premises after being in default on payment of rent for 10 days.
>
> "(b)  When the lease by its terms has expired and has not been renewed, or when the *tenant* or person in possession is holding from month to month, or year to year, and remains in possession after notice to quit as provided in

ORS 105.120, or *is holding contrary to any condition or covenant of the lease* or is holding possession without any written lease or agreement." ORS 105.115(1) (emphasis added).

Plaintiff contends that it proved that it was entitled to judgment under ORS 105.115(1)(a), because defendants failed to pay the minimum rent or, alternatively, under ORS 105.115(1)(b), because defendants failed to pay CAM charges and, therefore, were "holding contrary to [a] condition or covenant of the lease."

Assuming that plaintiff submitted evidence sufficient to prove both theories, we disagree that the mere introduction of evidence preserves a legal theory that was not prosecuted to the trial court. *See Friesen v. Fuiten*, 257 Or 221, 230-31, 478 P2d 372 (1970) (Supreme Court refused to consider legal theories that had not been presented to the trial court). To the contrary, "the pleadings, the prayer and the arguments at trial" reveal the legal theories plaintiff presented to the trial court in support of its claim. *Emmert Industrial Corp. v. Sanders*, 131 Or App 113, 116, 883 P2d 1304 (1994), *rev den* 320 Or 587 (1995). A theory of recovery raised for the first time in a post-trial motion is not an "argument *at trial.*" *See Brewer v. Erwin*, 61 Or App 642, 645, 658 P2d 1180 (1983), *modified* 70 Or App 709, 690 P2d 1122 (1984), *rev den* 300 Or 162 (1985) (party is not entitled to a new trial based on an issue that was not raised at trial).

In its amended complaint, plaintiff alleged that defendants were in possession of the disputed premises, that defendants unlawfully held the premises with force after being served with a notice to quit, and that plaintiff was entitled to possession. Plaintiff did not identify the *cause* of the unlawful holding. While such an omission is not fatal to the sufficiency of an FED complaint, plaintiff's complaint certainly did not reveal its theory of the case to the trial court. *See* ORS 105.125(1) (outlining requisites of FED complaints); *see also Class v. Carter*, 293 Or 147, 150, 645 P2d 536 (1982). Therefore, in order to discern the theory or theories that plaintiff advanced in support of its claim, we must examine the arguments at trial.

Although it designated the record of all oral proceedings, which consisted of three audio tapes, plaintiff did not

set out the pertinent portions of the record revealing its theory or theories of the case. Thus, except for the readily accessible information contained in its trial memorandum, the task of determining plaintiffs' trial theory would require us to search for the pertinent portions of the record. We are not obligated to conduct such searches and decline to do so. ORAP 5.45(3); *Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 544, 986 P2d 646, *rev den* 329 Or 527 (1999).

■　　Based on the available record, we find nothing to contradict the trial court's determination that plaintiff's present theory of breach was advanced for the first time in plaintiff's post-trial motion. Instead, it is evident, as the trial court concluded, that plaintiff's sole theory at trial was that it was entitled to judgment due to nonpayment of rent.[3] For the following reasons, that theory is of no avail to plaintiff on appeal.

■　　Defendants were entitled to designate the lease payments they made from October 1997 to January 1998 as rent, rather than as CAM payments. *See Fowler v. Courtemanche*, 202 Or 413, 426, 274 P2d 258 (1954) (debtor having two or more claims with same creditor may designate the claim to which the payment is to be applied). Plaintiff does not assign error to the trial court's finding that defendants, by their conduct, designated the disputed payments as rent rather than CAM. Furthermore, even if plaintiff had properly preserved any claim of error with respect to the sufficiency of the evidence, we would once again decline to search the record to resolve that challenge. Because plaintiff has not demonstrated that the trial court erred, we affirm.

　　Affirmed.

---

[3] Plaintiff does not contend that, under the parties' lease, failure to pay CAM charges amounts to the nonpayment of rent.